Harrison v. Guerin.

HARRISON and wife *vs.* GUERIN and others.

1. As between a purchaser for value, holding under a deed with the usual full covenants, including warranty general, and a prior mortgagee, the right of such purchaser to require the mortgagee to have, recourse for the satisfaction of the mortgage to the part of the mortgaged premises owned by the mortgagor, before looking to the part conveyed to him, is undoubted.

2. If the mortgagee, in such case, with knowledge of the rights of the purchaser, and without his assent, releases from his mortgage any part of the mortgaged premises which is, in equity, liable for the mortgage debt before recourse can be had to the land of such purchaser, the mortgage will, as against the latter land, be discharged to the extent of the value of such released land at the time of the release; and if its value be equivalent to the whole amount of the mortgage, the land of the purchaser will be wholly discharged from the mortgage in consequence of such release.

3. As between a mortgagor and his grantee by voluntary conveyance,. with covenant against encumbrances and warranty general, the latter has a right in equity, in the absence of any facts which would disentitle him to the protection, to cast the burden of an encumbrance existing at the time of the conveyance, upon the land of the former, subject to the encumbrance.

4. But where such mortgagor conveyed to a voluntary grantee (in this case his wife) subject to a mortgage, and the covenants were inserted without his directions, and he executed the conveyance in ignorance that they were in the deed, the burden of the encumbrance is not shifted.

5. Testimony of the grantor that his voluntary grantee understood that the land conveyed to her was subject to the mortgage, is admissible to rebut the equity which would otherwise arise under the deed to shift the burden of the mortgage to that part of the premises retained by himself.

6. The effect of such testimony would be to make that part of the premises conveyed to her, liable to the payment of its proper proportion of the mortgage debt.

Bill to foreclose. On final hearing on pleadings and proofs..

Harrison *v.* Guerin.

*Mr. W. Freeman,* for complainants.

*Mr. M. R. Kenny,* for defendants.

THE CHANCELLOR.

On the 30th of June, 1873, Patrick Cahill, of the city of Orange, in this state, being the owner in fee of two lots of land on Forest street in that place, executed and delivered to Daniel Guerin a deed of conveyance in fee, with the usual full covenants, including warranty general, for one of the lots. The consideration expressed in the deed was $2500, but was merely nominal, the object of the conveyance being to convey the property to Ellen Cahill, the wife of the grantor. By deed of the same date, with like covenants, Guerin, for the same nominal consideration, conveyed the property to Mrs. Cahill. At the date of those conveyances, the two lots were subject to a mortgage given by Cahill and his wife to John H. Matthews, on the 1st of June, 1871, to secure the payment of Cahill's bond, for $1200 and interest. On the 3d of November, 1874, Mrs. Cahill died, having never had issue. The lot so conveyed to her descended to the defendants, her heirs-at-law. On the 1st of June, 1875, the complainants, (the mortgage having been duly assigned to Mrs. Harrison on the 1st of July, 1873,) at the request of Patrick Cahill, the mortgagor, released the other lot, then and still owned by him, from the lien and encumbrance of the mortgage. Six days afterwards, the bill in this cause was filed for foreclosure and sale of the lot owned by the defendants. The defendants answered the bill, setting up their equity in the premises against the complainants. On the hearing, the complainants' counsel objected to the answer, on the ground that it did not positively allege that the release was executed. The answer, however, sets up the release, and claims any equity arising from it.

As between a purchaser for value, holding under a deed such as that given to Daniel Guerin, and the prior mortgagee, the right of the former to require the latter to have recourse,

for the satisfaction of the mortgage, to the part of the mort-gaged premises owned by the mortgagor, before looking to the part conveyed to such purchaser, is undoubted. If the mort-gagee in such case, with knowledge of the rights of the pur-chaser, and without his assent, releases from his mortgage any part of the mortgaged premises which is, in equity, liable for the mortgage debt before recourse can be had to the land of such purchaser, the mortgage will, as against the latter land, be discharged, to the extent of the value of such re-leased land at the time of the release; and if its value be equivalent to the whole amount of the mortgage, the land of the purchaser will be wholly discharged from the mortgage in consequence of such release. That Mrs. Harrison was fully aware of the rights of the defendants in the premises at the time of the release, there appears to be no room to doubt. The evidence is, that when, after the filing of the bill, she was reproached by the father of the defendants for having done them a wrong in executing the release, she stated that she knew what she was doing when she executed it, and that she had said, when she was requested to sign it, that she did not " wish anything mean about it "—obviously referring to the suggestion of her own mind as to the possible injustice towards the defendants of releasing the land owned by Cahill, and leaving the defendants to bear the burden of her mortgage. In her conversation with the defendants' father, above referred to, she repudiated the suggestion that she had executed the release in ignorance of the rights of the defendants; when he said to her, " Now, Mrs. Harrison, when you see it was mean, and you did not know what you were doing, could you not undo it?" she answered, " No, I don't think I could; I signed it, and I must now leave it in the hands of my lawyers; it is in the law; but I don't want you to say I did not know what I was doing." She did not, in the conversation, claim to have acted in ignorance of the rights of the defendants, nor did she, by testimony in the cause, contradict this statement of the witness, nor attempt to show that she had not actual notice of those rights when she executed the release. It cannot be

doubted that she was well aware of them, and that she executed the release to enable Cahill to throw the entire bur-den of the mortgage on the land of the defendants. By the release she discharged a very large part of the mortgaged premises from the encumbrance of the mortgage, without any consideration whatever, only a few days before this suit was begun; and besides, it appears that the interest had been regularly paid up to the time of the filing of the bill. The design of Cahill in the matter, and the knowledge of Mrs. Harrison of his design, and the means by which it was proposed to effect it, are clear. But it is insisted by the complainants' counsel that the defendants, who claim by descent merely, under a voluntary conveyance, are entitled to no equitable consideration in the premises. This position cannot be maintained. Obviously, as between the mortgagor and his grantee by voluntary conveyance with covenant against encumbrances and warranty general, the latter has a right in equity, in the absence of any facts which would disentitle him to the protection, to cast the burden of the encumbrance existing at the time of the conveyance, upon the land of the former, subject to the encumbrance. *Gaskill* v. *Sine,* 2 *Beas.* 400; *Thompson* v. *Murray,* 2 *Hill's C. R.* 204, 213.

In this case, however, there is evidence in the testimony of Cahill, that the conveyance to his wife was made subject to the mortgage in suit, and that he supposed that the lot conveyed to her was the only property covered by the mortgage; and further, that the covenants in the deed from Cahill to Guerin were inserted by the lawyer who drew the deed, without directions from anybody, and that the deed was executed without any knowledge on the part of Cahill that they were in the deed. It appears from the evidence that Cahill intended to convey to his wife one-half of his real estate. There was probably no intention on his part to charge the residue of his real estate with the payment of the encumbrances on the land so conveyed to her. He testifies that she understood that the land conveyed to her was subject to the mortgage. This evidence may be received to rebut the equity

which otherwise would arise under the deed. *Bolles* v. *Beach*, 2 *Zab.* 680 ; *Wilson* v. *King*, 8 *C. E. Green* 150. Its effect will be merely to limit it. It will not destroy it altogether. If the land had been conveyed to her subject to the mortgage, it would, as against the residue of the mortgaged premises, have been liable, in her hands, to the payment of its proper proportion of the mortgage debt, and to that proportion only. *Hoy* v. *Bramhall*, 4 *C. E. Green* 74 ; *Hill's Adm'rs* v. *McCarter, ante, p.* 41. Cahill says, also, that he is sure that neither he nor his wife knew or thought that the mortgage covered any other lot than that which was conveyed to her. It is by no means probable that he was under a misapprehension as to whether the mortgage covered only one or both of the two lots, which, so far as appears, were all the real estate he owned. It may be remarked, that in Gaskell *v.* Sine there was not only no evidence to rebut the equity in favor of the voluntary deed, but, according to the testimony, the mortgagor, when, after the making of the voluntary deed, the husband of the grantee spoke to him in reference to the encumbrance on the property, declared his ability to pay it off.

Mrs. Harrison's mortgage will be held to be discharged as against the defendants' land, to the extent of the due proportion of the mortgage debt which the released land would have been liable to pay but for the release, and the defendants' land will be liable for the balance.