O'Mara *v.* Nugent.

---

MARY S. O'MARA et al., appellants,

*v.*

ELIZABETH NUGENT, respondent,

A husband and wife assigned policies of life insurance held by the wife on the life of her husband, to secure their assignee from loss as administrator of the husband's deceased partner, to whose estate the husband was largely indebted.—*Held,*

(1) That while such an assignment was valid, yet as the administrator had released an endorser on the note which represented his or his intestate's claim against the husband, the wife was entitled to have the policies surrendered and transferred to her, although she had allowed the assignment to remain unquestioned for several years thereafter.

(2) That the fact that the premiums on the policies had been paid by the husband out of his own funds, could not be raised by the defendants, because the pleadings had not been framed so as to include that question.

---

*Mr. John W. Taylor,* for appellants.

*Mr. Fred. H. Teese,* for respondent.

O'Mara *v.* Nugent.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is as follows:

The bill in this case was filed to compel the surrender of two policies of insurance on the life of Christopher Nugent for the benefit of his wife.

The policies were assigned to David O'Mara in his lifetime by C. Nugent and his wife, the complainant. The assignment is under seal, purports to be for a valuable consideration, and is absolute on its face. The bill alleges, however, that the real purpose of the assignment was to secure David O'Mara against any loss because of his becoming administrator of the estate of one Farrell—to which estate Nugent was largely indebted. The answer admits that the policies were assigned for such purpose, but charges that they were also assigned for the further purpose of securing to said O'Mara a large amount due to him personally.

To arrive at the truth, parol testimony became necessary.

Christopher Nugent says that O'Mara asked him to have the assignment made to secure the money due the Farrell estate; that he asked his wife to make the assignment for that purpose, and that it was assigned for that purpose and no other. He also says there was no subsequent arrangement respecting it. The complainant says they were assigned to secure the payment of the debt due from her husband to the Farrell estate, and for no other purpose.

David O'Mara died soon after. His widow, Mary, administered upon his estate. According to her statements under oath, she had a very intimate knowledge of her husband's affairs. She says she knew of Nugent's liability to the Farrell estate, of which her husband was administrator, and of the liability of Nugent & Co. to her husband personally. She was thus interrogated:

" *Q.* Have you any personal knowledge of the purpose or object of that assignment?

" *A.* Any personal knowledge?

" *Q.* Yes?

" *A.* It was given for the Farrell estate."

Then again, after many other questions:

" *Q.* Do you know when your husband first got it?

" *A.* At the time he was made administrator of the Farrell estate.

" *Q.* You knew he had it?

" *A.* Yes, sir; I saw it several times.

" *Q.* Do you know—I think I asked you whether you knew the object of that assignment?

" *A.* Of the policy?

" *Q.* Yes?

" *A.* For the Farrell estate?

" *Q.* Solely?

" *A.* No, sir.

" *Q.* What do you know about it?

" *A.* I knew, at the time that Mr. O'Mara was made administrator of the Farrell estate, that Mr. Nugent owed Mr. O'Mara a great deal of money, at least to my knowledge at that time, $16,000; then when Mr. O'Mara took the position of administrator, in—he also knew that Mr.—he had these policies given him as security for this estate, and he really would have always felt that they were part security for the loan to him—money that was loaned to him."

My mind is fully satisfied from this evidence that the assignment was not made for any other purpose than to secure the Farrell estate. This view is enforced by the consideration that the administrator changed the character or form of the indebtedness. Although it is not clearly established, it was admitted that the Nugents and Farrell were in business as partners, and that the Nugents became liable to Farrell in the sum of $20,000. This is so when O'Mara undertakes the administration. Instead of running risks as administrator, he accepts of the notes of the Nugents, in all probability giving time. Well might he, as a prudent trustee, insist on further security. And when it is remembered that the assignment was made at the same time, no reasonable doubt remains.

It is not to be overlooked that the individual claim of O'Mara was of long standing, and had never been pressed for payment, and was not for years after the payment of the Farrell claim. But as I understand the testimony, what is most convincing is that at the time of the execution of this assignment Mr. Oscar Baldwin was endorser on the notes held by O'Mara against Nugent. It is reasonable, therefore, to suppose, as C. Nugent swears,

that O'Mara had all the security for that claim which he desired.

But should there be a mistake in this, and the parties really intended to secure the claims of O'Mara as well as the Farrell claim, then the complainant urges in bar the fifth section of the act respecting the rights of married women, which forbids them becoming surety or liable for the debt or default of any other person; and also the fifteenth section, which declares that the rights and property of a married woman shall not be subject to the disposal of her husband, nor liable for his debts.

However, the authorities all hold that a married woman may, with her husband, mortgage her lands to pay her debts or the debts of any other person, for which she is in no way liable. *Merchant* v. *Thompson, 7 Stew. Eq. 73, and cases cited.*

Certainly, if she may assign an interest in lands as collateral security for the payment of the debts of another, she may her interest in a chattel, or chose in action.

But this cannot avail the defendant, since I do not find that there was any assignment of these policies to secure the O'Mara claim.

Counsel for defendants does not rest his case on the assignment alone, but also on the fact that the policies were so long allowed to remain with defendants. The Farrell claim was paid in 1875; David O'Mara died in 1876; and this bill was not filed until June, 1882. Since no consent to this whatever of Mrs. Nugent is satisfactorily shown, in my judgment, not the slightest presumption arises against her on this account. To create an obligation under a married woman under such circumstances, not only her knowledge of the purpose for which her property was adversely held, but her assent thereto, should be established.

In addition to this, the defendants claim that, the premiums on these policies having all been paid by C. Nugent out of his own private funds, therefore to the extent of such payments they have a just and equitable lien on these policies. I think the pleadings are not so framed as to embrace this claim. There is no cross-bill, nor any charge in the nature of a cross-bill, nor prayer for such equitable relief upon which a decree can be based.

The answers of defendants allege that the premiums were all paid by C. Nugent. Here the defence is rested. Without presenting such a case by the pleadings as would be sufficient, on original bill filed, for the court to grant a decree upon such facts as the counsel allege are sufficiently proved, would, I think, be highly inequitable and might work great injustice.

But he who urges equity must do equity. If these policies were assigned so as to give O'Mara an equitable lien upon them, that lien was lost not only when the time was extended for the payment of the amount due, but also when Oscar Baldwin, as endorser, was released. These were such violations of the rights of Mrs. Nugent as the court must notice. See *Brandt on Surety and Guaranty*, §§ *21, 22*.

I will advise a decree for complainant.

PER CURIAM.

This decree unanimously affirmed for the reasons given by Vice-Chancellor Bird.