JOHN MONROE et al.

*v.*

WILLIAM H. DE FOREST et al.

1. When a creditor who holds a collateral security taken from his debtor consents to a material alteration therein, to the prejudice of the surety, the surety is thereby discharged.

2. An executor of a surety cannot consent to the discharge of a mortgage given to secure the debt for which the testatrix was surety until all the conditions of the obligation be complied with.

On exceptions to master's report.

Mr. *James Buchanan* and Mr. *Maximilian T. Rosenberg,* for the exceptants.

Mr. *Frank Bergen,* contra.

BIRD, V. C.

Dix & Phyfe claim to be creditors of the deceased testatrix. They hold a promissory note which was drawn by William H. De Forest, Jr., to the order of William H. De Forest, Sr., and endorsed by the latter, and also endorsed by the deceased testatrix, who was the wife of the first endorser. At the time of the execution of the note a bond was given by the maker of the note in the sum of $60,000, for the payment of $30,000, with interest, which bond was secured by a mortgage on certain lots on One Hundred and Forty-fourth street and on Seventy-sixth street in New York city. At the same time an agreement was entered into between Dix & Phyfe and the maker of the note, which concluded with the stipulation in these words:

"The parties of the second part agree that the said mortgage of thirty thousand dollars on the premises on the south side of One Hundred and Forty-fourth street shall be subordinate and subject to the second mortgage of eighty thousand dollars, and shall be withheld from record for the period of ten months, which is the time provided for the completion of said buildings, provided the party of the first part shall faithfully perform his covenants under this agreement. And the parties of the second part agree to release from time to time any of the houses so to be completed from the lien of said mortgage on the payment to them of the sum of twenty-five hundred dollars on such house."

The maker of the note and the owner of the lots commenced the erection of buildings thereon, and after the walls were erected applications were made from time to time by builders or materialmen to Dix & Phyfe for the release of their lien to the extent of the labor and material employed in and upon the said buildings, which was granted by them without any payment whatsoever.

It is insisted that this release, without compensation, according to the agreement, works a discharge of the surety. I can find no case or rule of law which will permit me to hold otherwise. It is well settled that a surety is entitled to the benefit of all collaterals which have been taken by the creditor from the principal debtor. In this case, Dix & Phyfe not only had the mortgage referred to, but entered into an agreement in and by which they would release the mortgage from each of the various lots upon the payment of $2,500. It is insisted that this mortgage turned out to be of no value, and that therefore the surety is not damaged by the release. I very much doubt, under such a stipulation, if an argument to that effect can be of any avail, especially where the testimony respecting the value of the premises at the time of the release shed so little light upon the question of value. Besides this, the release evidently worked such a change of condition as to make it impossible to determine what the result would have been if such conditions had not been imposed. Who can tell but that the embarrassments which the mortgage presented would not have been overcome by the owner had the mortgagee refused to be subservient to his wishes in surrendering his position as such mortgagee?

But the material point in the case is the absolute agreement that the mortgage is to stand until the payment of the $2,500. It is that agreement which the surety is entitled to, as well as any benefit that may accrue from the value of the mortgaged premises. The lien of the mortgage may have been embarrassing; but relief against such embarrassment devolved upon the mortgagor or owner of the premises, and not upon the mortgagee in the face of the agreement. The surety had an undoubted right in any and every event to expect that mortgage to stand in the place by way of seniority, which it held until $2,500 was paid upon each lot.

This transaction comes directly within the judgment pronounced by Lord Loughborough, in *Rees* v. *Berrington, 2 Ves. Jr. 540,* also *2 White & T. Lead. Cas. 1870:* "It only amounts to this, that there shall be no transaction with the principal debtor without acquainting the person who has a great interest

Monroe v. De Forest.

in it. The surety only engages to make good the deficiency. It is the clearest and most evident equity not to carry on any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound and transact his affairs (for they are as much his as your own) without consulting him. You must let him judge whether he will give that indulgence contrary to the nature of his engagement." *2 White & T. Lead. Cas. 1894, 1901; Harr. Sub. § 19; Pearl v. Deacon, 1 De G. & J. *461, 2 Am. Lead. Cas. 394; Baker v. Briggs, 8 Pick. 122; Vose v. Florida Railroad Co., 50 N. Y. 374, 375; De Coly. Guar. 388, 389; Miller v. Stewart, 9 Wheat. 680; 1 Story Eq. Jur. §§ 324, 325; Price v. Truesdell, 1 Stew. Eq. 200; Philadelphia and Reading Railroad Co. v. Little, 14 Stew. Eq. 520; Brick v. Freehold National Bank, 8 Vr. 307.*

The surety, upon discharging the debt, is always entitled to all the securities which the creditor had taken for his own protection in the same condition as the creditor received them. *Pledge v. Buss, Johns. (Eng.) Ch. 663; 2 White & T. Lead. Cas. 1888, 1891; Vose v. Florida Railroad Co., supra; New Hampshire Savings Bank v. Colcord, 15 N. H. 119; Guild v. Butler, 127 Mass. 386; Paulin v. Kaighen, 5 Dutch. 480.*

In such cases the law presumes injury to the surety until the contrary is established, the burden of which is upon the creditor. *2 White & T. Lead. Cas. 1902.*

When this agreement is read and considered it will be seen that the bond and mortgage referred to were to give way for other securities therein named, and was in reality to be postponed to such a period of time as would enable the debtor and owner to complete the buildings upon the lands mentioned. For this he was allowed ten months, by which it was manifestly intended to give him every opportunity to provide for every embarrassment. In the light of the above authorities, the creditor had no right to interfere with or to alter these conditions without the consent of the surety.

But it is claimed that the result above expressed is not the just result in this particular case, because William H. De

Forest, Sr., the executor of the surety, consented to, if he did not request, the execution of the releases by Dix & Phyfe, after he had proved the will and taken upon himself the burden of the execution thereof. I find nothing in the case that justifies the executor in giving the least countenance to such release. Certainly he derived no such power from the will. This instrument only authorizes him to pay the just debts of the testatrix, and possibly to invest and reinvest certain portions of the money, and to make sale of the real estate. The last clause is in these words:

"I hereby grant to my said executor and trustees full power of sale of any or all of my said estate upon such terms as said executor or trustees shall deem wise, and I hereby grant to my said trustees full discretion in the management of said trust estates and the character of the investments."

Certainly here is no semblance of power to increase the liabilities of the estate, nor to discharge any security then existing against liability, however slight that security might be supposed to be in the estimation of the executor.

*Perry on Trusts § 483* says:

"Trustees who hold an equity of redemption in lands mortgaged for more than their value, may release the equity of redemption to avoid the costs of a foreclosure suit, where such suit will lie and where costs would be imposed upon them as defendants. If a trustee is a mortgagee, he would not be justified in releasing part of his security for the convenience of the mortgagor merely, nor unless there was some advantage to be gained to the *cestui que trust* or the trust estate."

*Lewin on Trusts and Trustees p. \*591 § 44* says:

"A trustee may, under circumstances, release or compound a debt. But if a trustee release or compound a debt without some sufficient ground or justification, or if he sell a debt for a grossly inadequate consideration, he will clearly be answerable to the *cestuis que trust* for the amount of the *devastavit.*"

In *Jevon v. Bush, 1 Vern. 342,* a trustee in a recognizance, having released it without any consideration, was decreed to pay the principal and interest.

Dix & Phyfe had full notice of the fact that William H. De Forest was executor of the surety, who had died, and consequently

that it was his duty to administer her estate in the interests of the *cestuis que trust*, the creditors of his testatrix.

However, it is pressed upon the attention of the court that the real estate so mortgaged as security for the payment of the $30,000 was absolutely worthless for any such purpose, and that consequently no injury was done to the estate of the testatrix ; or, in other words, that consent to such release by the executor did not increase in any wise the liability of the estate. This conclusion has no foundation to rest upon under the circumstances of the case. And, what is more to be regretted, it is impossible, as was said by Lord Chief-Justice Knight Bruce, in *Wiles* v. *Gresham, 5 De G., M. & G. 773*, now to determine that question. Indeed, that question could only have been satisfactorily settled by the ordinary or natural progress of events, in the just prosecution of the rights of all parties interested in the premises. From this statement it will be perceived that the point to be determined is not the value of the premises at any particular time, but whether William H. De Forrest, Jr., or anyone in his stead, would have carried out the implied promises and agreement entered into with Dix & Phyfe, and paid the $2,500 in discharge of their mortgage to that extent, in case no release had been executed. This was his undertaking. Upon the strength of this undertaking the transaction was completed not only as to Dix & Phyfe, but as to Mrs. De Forest, the surety. When this transaction in all its details was carried through, the prospective value of the property must have been considered, but whether it was or not, the expressed condition was that upon the execution of a release $2,500 should be paid. The value of the property had nothing whatever to do with this condition, and as was clearly and forcibly intimated in the case of *Wiles* v. *Gresham*, *supra*, none can say that if the release had not been executed the mortgagor or owner of the premises would not have raised the $2,500. It was not only his contract that he would, but his highest interest to do so. The buildings were partially erected. It would be absurd for the court to assume that it was impossible for the owner to raise the $2,500 upon each lot. It was incumbent upon him to raise the money or submit to the sacrifice of

all that he had already invested, the former of which is clearly much more probable than the latter.

The foregoing conclusions seem to be quite in harmony with the authorities which hold that an executor or administrator cannot bind the estate which he is administering by any new promise. *Sumner* v. *Williams, 8 Mass. 162; Schmittler* v. *Simon, 101 N. Y. 554; Pinney* v. *Johnson, 8 Wend. 500; Austin* v. *Monroe et al., 47 N. Y. 360; McFarlan* v. *Stinson et al., 56 Ga. 396.*

An executor cannot, by his promise as such, bind the assets in his hands, nor can he consent to their diminution or surrender without a reasonable consideration therefor, or until all the conditions of the obligation be complied with. The estate being insolvent the creditors have a right to be heard.

I think the exception to the master's report in this respect should be sustained, with costs.