WILLIAM M. DAVIS and JAMES D. DE WITT, complainants and respondents,

*v.*

EDWARD PIGGOTT, CATHARINE PAXTON and DAVID CRESSMAN, administrators, &c., et al., defendants.

Appeal of DAVID CRESSMAN, administrator, &c., appellant.

[Filed May 20th, 1899.]

1. A first mortgagee, with notice that there was a subsequent mortgage on part of the same premises, released that part of the mortgaged premises not covered by the subsequent mortgage. At the time the release was executed the then holder of the second mortgage agreed, in writing, with the first mortgagee, that he should give the release, and stipulated that the first mortgage should be first paid out of the unreleased part of the mortgaged premises. After this agreement and release, the holder of the second mortgage assigned it to Davis, who had no notice of the agreement made by his assignor.—*Held,*

that the lien of the first mortgage upon the unreleased lands was unimpaired by the release, and that it is entitled to priority of payment over the second mortgage.

2. The rule in regard to latent equities cannot be invoked for the purpose of advancing the assignee of a mortgage to a position better than that he occupies according to the record; its only application can be to prevent him from being dislodged from the position he apparently holds according to the record.

3. When he enters upon inquiry into facts outside the record, he must stand where all the equities place him.

On appeal from a decree advised by Vice-Chancellor Reed, whose opinion is reported in *11 Dick. Ch. Rep. 634.*

*Mr. Joseph M. Roseberry,* for the appellant.

*Mr. Osiris D. McConnell,* for Davis.

The opinion of the court was delivered by

VAN SYCKEL, J.

Kaniper owned one hundred and eighty-one acres of land. In 1863 he gave a first mortgage on the whole tract to Cressman for $2,000. In 1875 he gave a mortgage to De Witt for $600.

In 1876 Kaniper sold one hundred and eleven acres of the tract to Piggott.

Piggott gave a mortgage on the one hundred and eleven acres to Kaniper for $2,000.

All these mortgages were duly recorded.

In June, 1877, Kaniper assigned his mortgage to Lawall.

In December, 1877, Cressman executed to Kaniper a release of the seventy acres (which Kaniper still owned) from the lieu of the Cressman mortgage.

This release was recorded December 15th, 1877.

At the time the release was executed an agreement in writing was signed by De Witt and Lawall consenting to the making of the release, and stipulating that the Cressman mortgage should be first paid out of the unreleased tract of one hundred and eleven acres.

Davis v. Cressman.

Piggott also consented in writing to the making of the release. The agreement of De Witt and Lawall was not recorded.

After this release Lawall assigned his mortgage to Davis, who had no notice of the arrangement made with Cressman.

Davis filed his bill to foreclose, making Cressman a party defendant.

The decree appealed from gives the Davis mortgage priority over the Cressman mortgage on the one-hundred-and-eleven-acre tract.

The vice-chancellor bases his opinion upon the case of *Vredenburgh* v. *Burnet, 4 Stew. Eq. 229,* affirmed in this court without an opinion in *7 Stew. Eq. 252.*

It is not necessary to consider either that case or the later case of *Hoagland* v. *Shampanore, 10 Stew. Eq. 588.* If it be conceded, as asserted in *Vredenburgh* v. *Burnet,* that the assignee of a second mortgage takes it free from latent or secret equities created by the mortgagee in favor of third persons, the order of priority in this case will not be affected by that rule. That doctrine in regard to latent equities cannot be invoked for the purpose of advancing the assignee of a mortgage to a position better than that he occupies according to the record; its only application can be to prevent him from being dislodged from the position he apparently holds according to the registry. The utmost that Davis can claim is that the question of priority shall be settled in accordance with the record.

The record showed that Cressman held the first mortgage, and that he released the seventy acres.

The equity which entitles a subsequent mortgage encumbrancer to the benefit of a release executed by a first mortgagee arises only when the first mortgagee gives the release with knowledge of the existence of the subsequent mortgage; and if the release is executed without notice of existing equities on the part of the subsequent encumbrancer, the first mortgagee is not responsible for the consequences of his act, nor is the lien of his mortgage in anywise impaired. The recording of the subsequent mortgage will not operate as constructive notice of its existence to the prior mortgagee. *Blair* v. *Ward, 2 Stock. 119; Ward* v.

*Hague,* 10 *C. E. Gr.* 397; *Vanorden* v. *Johnson,* 1 *McCart.* 376; *Hoy* v. *Bramhall,* 4 *C. E. Gr.* 564.

The situation disclosed by the record when Davis took the assignment of the Lawall mortgage was that Cressman held the first mortgage, and that he had executed a release of a portion of the premises mortgaged to him. There was nothing upon the record to charge Cressman with a knowledge of the existence of the subsequent mortgages, and therefore Davis had no right to presume from the record that the priority of the Cressman mortgage was in any respect impaired by the release. The title which, according to the record, Davis acquired to the Lawall mortgage was a title subject to and subsequent to the Cressman mortgage. He is now claiming not to be protected against latent equities for the purpose of preserving the *status* which the record gave him, but he is seeking to set up latent equities to better that position. It was necessary for Davis, in order to displace the Cressman mortgage, to go outside of the record and prove such a state of facts as would change the order of priority presented by the record.

Cressman, having the first mortgage on the one hundred and eighty-one acres, could not, with notice of the De Witt and Lawall mortgages, release the seventy acres and at the same time retain his priority on the unreleased part, because he would thereby impair the security of the holders of those mortgages and do them an injury.

It appears in the proofs that Cressman did release with knowledge of the existence of the subsequent encumbrances, but it also appears that he took the precaution to go to De Witt and Lawall and obtain their consent in writing that he might execute the release without affecting his priority on the unreleased land. All the parties to be affected by the release agreed that it should be given, and they could not recede from their stipulation.

Davis had a right to resort to proof *aliunde* to show that the order of priority apparent upon the record should not prevail, but when he entered upon that inquiry he was required to stand where all the latent equities placed him.

It would be manifestly inequitable to permit Cressman's

priority to be impaired in contravention of the agreement with Lawall.

If Davis desired to occupy a position different from that indicated by the record, he could have made inquiry of Cressman and of Lawall as to the circumstances attending the release.

The decree of the chancellor advancing the Davis mortgage over the Cressman mortgage should be reversed, and a decree should be made in conformity to this opinion.

*For reversal*—The Chief-Justice, Depue, Van Syckel, Dixon, Garrison, Lippincott, Gummere, Ludlow, Collins, Bogert, Nixon, Hendrickson, Adams, Vredenburgh—14.

*For affirmance*—None.