In December, 1921, the complainant, a man then about seventy-five years old, and in somewhat feeble health, arranged a sale of a dwelling house property in Plainfield, through the defendant Gelfen, with whom he had had numerous dealings and upon whom he had come to rely. The sale was for $10,000 — $500 cash and $9,500 purchase-money bond and mortgage — to the defendants Samuel Schwartz and Bessie, his wife. Complainant executed the deed and gave it to Gelfen for delivery; Gelfen gave complainant the $500 and showed him what he said were the bond and mortgage, and *Page 235 
told complainant he would place the mortgage on record for him — which complainant supposed he did.
A year or so later complainant became suspicious of Gelfen in connection with other transactions, and upon investigation found that the mortgage had never been placed on record, but that the deed had been recorded, and that there had been recorded shortly thereafter a conveyance of the same property (in form a deed but expressing that it was made as security for a debt of $7,000) from Samuel Schwartz and wife to the defendants Maurice Schwartz and Carl Schwartz, and a few weeks later another deed of conveyance, absolute in form, from the same grantors to the same grantees.
Complainant thereupon promptly filed his bill against all of the other persons hereinbefore named, charging them all with fraud and conspiracy, and praying a decree directing the execution and delivery of a $9,500 prior lien mortgage to him, or establishing a vendor's lien in his favor, or setting aside all the conveyances as being the result of the alleged fraudulent conspiracy.
Gelfen, Samuel Schwartz and his wife were served with process, but immediately disappeared. They filed no answers to the bill, and could not be found as witnesses. It appears that Samuel Schwartz was Gelfen's son-in-law or step-son, but that there is no relationship or connection of any kind between Maurice and Carl Schwartz and any of the other defendants.
Maurice and Carl Schwartz answered denying any fraud on their part or knowledge of any interest or claim of complainant. They state that the second deed of conveyance to them, though absolute on its face, was also intended only as a mortgage; that they hold the property only as security for $5,500 (with interest now aggregating $6,804.57) due them from Gelfen; and by counter-claim seek decree for the foreclosure of the two mortgage deeds.
Gelfen's misconduct of course is clear. The exact part played by Samuel Schwartz and his wife is not quite so clear (although their disappearance and failure to answer the charges of fraud tends to condemn them), for from the *Page 236 
evidence they may well have executed the $9,500 bond and mortgage to complainant and given them to Gelfen to be delivered to complainant. It is, however, clear that in any event, whether on the theory of vendor's lien or mortgage lien, complainant is entitled to a lien on the premises for the principal sum of $9,500, with interest from December 14th, 1921.
Complainant, however, is not entitled to have the conveyances set aside, or to a reconveyance from Maurice and Carl Schwartz — or to priority of his lien over theirs — because I am satisfied they are purchasers for value without notice of complainant's rights. Complainant has not sustained his charges of fraud against them. Fraud must be proven; it cannot be inferred where the evidence will support a finding of good faith equally as well as one of fraud. It is perhaps but fair to these answering defendants to say that their testimony affords satisfactory proof that they were not guilty of fraud, and that they had no knowledge of complainant's interest or the misconduct of the other defendants, and that they, in fact, paid to the other defendants the $9,500 for the repayment of the unpaid balance of which they hold the property. They are entitled to a decree for repayment or for the sale of the property for that purpose. Complainant's situation elicits sympathy, but Gelfen was his agent, not the agent of the counter-claimants, and where, as the result of Gelfen's misconduct, harm must fall on one party or the other, complainant must bear the burden.
It is contended by complainant that Maurice and Carl Schwartz must be charged with constructive notice of the rights of complainant because the conveyance or mortgage was made by Samuel Schwartz, whereas the loan secured thereby was to Gelfen, and that this cast upon the mortgagees the duty of inquiring as to why Samuel Schwartz was conveying real estate as security for Gelfen's debt. This argument is unsound. The doctrine of the duty of inquiry goes no further than to charge one with constructive knowledge of that which he would have learned had he made the inquiry. Even if it be assumed that the mortgagees were under the *Page 237 
duty of inquiring of Samuel Schwartz in order to protect themselves against possible rights or equities of Samuel Schwartz, it is not perceivable that such inquiry would have resulted in knowledge or information of complainant's rights or claims.
Another question arises, however, from other facts which developed at the hearing.
The first conveyance or mortgage of the Plainfield residence in question to Morris and Carl Schwartz was by Samuel Schwartz, as security for a loan of $7,000 by the mortgagees to Gelfen, on January 27th, 1922 — the repayment of the loan accruing due on April 27th, 1922. Gelfen also gave a mortgage of $7,000 to the Schwartz's on his Roselle property, as security for this loan. On February 17th, 1922, the Schwartz brothers loaned Gelfen $2,500 more, maturing due also on April 27th, 1922, and received as additional security not only the second mortgage deed on the Plainfield residence from Samuel Schwartz, but also a $2,500 mortgage from Gelfen covering four building lots at Roselle, and assignments from Gelfen of four mortgages for about $900 each, respectively, covering the four building lots separately.
Houses were in course of construction on these four lots, and in March these houses (or some of them) were destroyed by fire, and a fire loss of $10,500 was paid by insurance companies. It was arranged between the Schwartz brothers and Gelfen that $4,000 of this insurance should be retained by the Schwartz brothers as a payment on account of the $9,500 they had loaned, and the balance turned over to Gelfen — and this was done about April 1st — reducing the loan to $5,500 and accrued interest. At the same time the Schwartz brothers discharged the $7,000 and $2,500 Gelfen mortgages on the Roselle property and reassigned to Gelfen the four individual mortgages on the separate lots, which left them holding only the Plainfield property as security for the balance due them.
There is nothing in the evidence to show that the $4,000 payment was applied in any particular way as between the original $7,000 debt and the subsequent $2,500 debt. It *Page 238 
would appear from the evidence that the parties, after the loaning of the additional $2,500, regarded the entire $9,500 as a single indebtedness; it all matured on the same date, and the payment was applied to this debt as a whole.
As security for this debt the creditors (Schwartz brothers) had the two mortgage deeds made by Sam Schwartz on the Plainfield residence, the first for $7,000, the second specifying no amount but given at the time of the additional $2,500 loan. Together they amount to a mortgage to secure the entire $9,500. The creditors also had as security for this same $9,500 debt, property of the principal debtor Gelfen, consisting of a first mortgage of $7,000, a second mortgage of $2,500, both made by him to them on his Roselle property, and the four $900 mortgages held by Gelfen and by Gelfen assigned to the Schwartz brothers.
The Schwartz brothers, as creditors, thus held porperty of the principal debtor Gelfen, and of the surety, Sam Schwartz, as security for the $9,500 debt. On receiving payment from the principal debtor of only $4,000 of the $9,500 debt they released and surrendered to him all of this property held by them as security.
It is a well-established principle of the law of suretyship that where a creditor has property of the principal debtor as security for the debt, his surrender or release of such security will discharge the surety to the extent of the value of the property so released. Stearns Suretyship (3d ed.) 137 §98; Pingrey Suretyship Guaranty (2d ed.) 157 § 130;Story Eq. Jur. (14th ed.) §§ 449, 709; 32 Cyc. 216. See alsoPhiladelphia and Reading Railroad Co. v. Little, 41 N.J. Eq. 519
(at pp. 528, 529); Irving v. Mutual Trust Co., 82 N.J. Eq. 629
(at p. 633).
In O'Mara v. Nugent, 37 N.J. Eq. 326, a cognate principle was applied by the court of errors and appeals in favor of a surety who had assigned property as security, where the creditor released an endorser on a note made by the principal debtor. In this case no consideration seems to have been given to the value of the security reelased; the surety's pledged property was held completely discharged. *Page 239 
It is contended on behalf of the Schwartz brothers that the surety Samuel Schwartz must be deemed to have consented to this discharge of security of the principal debtor, because he was a son-in-law of Gelfen. That fact cannot be deemed a sufficient basis for the inference urged, and there is nothing else in the evidence to show any consent by Samuel Schwartz. The evidence would seem indeed to warrant the contrary inference, for the Schwartz brothers testify that they did not know Samuel or Bessie Schwartz and never had any dealings with them. The burden of proof to show such consent is, of course, on the creditor.Monroe v. De Forest, 53 N.J. Eq. 264 (at p. 267).
The result is, that the mortgage lien which the Schwartz brothers otherwise would have upon the Plainfield property must be reduced by the value of the property of Gelfen surrendered by the Schwartz brothers. Complainant contends that it should be discharged entirely, and, as has been previously noted, O'Mara
v. Nugent, supra, would seem to lend some support to that contention. Inasmuch, however, as the question was not there considered, and since the rule as generally stated is that the discharge of the surety is pro tanto according to the value of the principal debtor's property released, and since that would seem to be the logical rule according to equitable principles, that will be the rule applied in the instant case.
The equity in favor of Samuel Schwartz of course enures to the benefit of complainant, whose equities are superior to those of Samuel Schwartz, to the extent of the $9,500 vendor's lien.
The evidence in the case does not disclose the value of the Gelfen property surrendered. This question may be referred to a master (unless the parties can agree on it) and final decree entered accordingly. *Page 240