Complainant's suit is for deficiency due on a mortgage debt, after foreclosure sale.
The facts, as pleaded and proved, are somewhat more complicated than the following summary, but may be stated as follows without affecting the principles involved:
In 1924 Harry Haveson gave to John Van Nest his bond of $5,000 and his mortgage on a house and lot owned by him fronting twenty-one and one-half feet on Brunswick avenue and two hundred feet deep. Thereafter he conveyed the mortgaged premises to defendant Bugbee, who expressly assumed payment of the mortgage debt; later Bugbee conveyed to defendants Bash and Levin, who also assumed payment of the mortgage debt; still later Bash and Levin conveyed to Chambersburg Realty Company, which did not assume payment.
In 1929 the State of New Jersey was widening the Brunswick avenue highway and for that purpose required an additional thirty-four feet of width between the center line and the side line of the highway, and in December, 1929, the Chambersburg Realty Company conveyed to the state the front thirty-four feet of the mortgaged premises and at the same time the Trenton Trust Company, the then holder of the *Page 436 
bond and mortgage, released this thirty-four feet from lien of the mortgage.
In 1931 complainant, Hannah Mann, acquired the bond and mortgage from Trenton Trust Company and foreclosed. The decree was for some $5,100; the premises were sold for $3,100, resulting in a net deficiency of about $2,500. Complainant then commenced the present suit against the assuming grantees, Bugbee, Bash and Levin, to recover from them the deficiency aforesaid. They were parties defendant in the foreclosure suit but filed no answers therein.
Haveson, the original obligor and mortgagor is not a party to the present suit.
The defenses set up are three: (1) That Haveson, the original obligor, is not made a party defendant; (2) that complainant is a dummy or trustee for Haveson, and that by the assignment of the mortgage to her, there was a merger and extinguishment of the mortgage debt; (3) that the release of part of the mortgaged premises by the Trenton Trust Company when it held the mortgage, was without the knowledge and consent of the defendants, and thereby defendants became either completely discharged from liability, or at least became and are entitled to credit, in the amount of the value of the lands so released, plus the amount of alleged consequential damage to the remaining lands, against their liability for the mortgage debt.
It is contended by complainant that defendants are precluded by the principle of res adjudicata, from interposing these defenses in the present suit; that defendants were all parties to the foreclosure suit and that the final decree in that suit is binding and conclusive upon them and prevents their raising defenses in the present suit which they had the opportunity to set up in that foreclosure suit.
A judgment in a former suit is a bar to any attempt to litigate over again, in a subsequent suit between the same parties (or those in privity with them) any rights, matters or facts actually in issue and determined, or necessarily involved in the determination, in the former suit. See 34 C.J. 743. *Page 437 
The defenses now set up were not set up, and hence not actually tried or determined, in the foreclosure suit. It is urged, however, that the defendants had the opportunity to set these defenses up in the foreclosure suit, and should have done so, and that they are bound by the decree just as conclusively as if they had set them up and received an adverse determination on them.
In order, however, to prevent, under the doctrine of resadjudicata, a party to a suit from attempting to assert an alleged right either as a basis for affirmative relief or as ground of defense, it must appear that the existence of such alleged right was actually or by necessary implication, established or denied by the judgment in a prior suit between the same (or legally equivalent) parties.
It is sometimes said that a defendant is not prevented by the doctrine of res adjudicata from setting up defenses which he did not set up in a former suit between the same parties, unless the former suit was for the same claim or demand — was on the same cause of action — as the second suit. Such expression seems not apt — for it is rare indeed to find a second suit between the same parties for exactly the same cause of action; and assuredly the doctrine of res adjudicata is not so narrowly limited — it extends to any claim of right which was an essential factor orpart of the cause of action sued on in the prior suit. Cf.Murray v. Pearce, infra; Freitag v. Renshaw, 9 N.J. Mis. R.1161; 157 Atl. Rep. 455.
A failure to set up a particular defense, is in effect an admission that the defendant has no such defense to that suit — that he has no such right in opposition to the right claimed by the plaintiff or complainant; and the judgment or decree therefore, by necessary implication, establishes it as a fact that the defendant has no such defense or opposing right. But clearly, a failure to set up a particular right or claim in defense of a suit can have no such effect unless such right or claim, if set up, would be entertainable in that suit as a valid or material defense to the relief sought by the plaintiff or complainant in that suit. *Page 438 
It becomes necessary therefore to consider the nature of the prior suit — the foreclosure suit. Such a suit is a proceedingin rem — against the mortgaged premises. As it has been expressed in some of the cases — where a real estate mortgage is given to secure a bond, under the law in New Jersey, "the land becomes the principal debtor." The right which the complainant seeks to establish by his suit — and the decree therein — is the right to have certain lands sold and the proceeds applied to the payment of a debt due to him.
He asserts, and it is necessary for him to establish, that there is a valid debt owing to him, and accrued due and payable — and the amount thereof; that the particular lands in question were and are subject as security for the payment of that debt. And that (omitting possible questions of priorities as to other parties claiming interests in the lands), is all that he is required to establish. He is not required to establish whether or not there are any other persons liable to him for the payment of the mortgage debt; and any defense on an issue of that kind would not be material or maintainable.
Where the mortgaged premises have been subsequently conveyed by the mortgagor to grantees who have assumed the mortgagor's liability for the payment of the mortgage debt, and such subsequent grantees have been brought in as parties defendant in the foreclosure suit, it is incumbent upon them to set up any and all claims of right which would go toward denial or modification of those rights asserted by complainant which are necessary and essential to the establishment of the decree sought by him. If, for instance, there have been any payments made on account of the mortgage debt, the facts in regard to them must be set up in defense, in opposition to complainant's assertion that the full amount of the mortgage debt is still due and owing to him and that the mortgaged premises are liable to him for that amount. The foreclosure decree will be res adjudicata, as to all persons party to the suit, as to the amount of the mortgage debt due and owing. Murray v. Pearce, 95 N.J. Law 104;112 Atl. Rep. 314; Usbe Building and Loan Association v. Ocean Pier,c., Co., 112 N.J. Eq. 580. *Page 439 
On the other hand, it is not necessary for such a defendant — nor would he be permitted — to set up in answer to the bill, an allegation that subsequent to his acquisition of title and assumption of liability for the mortgage debt he had by valid agreement with the mortgagee, or with the mortgagor, secured a release or discharge of that liability. Such an allegation would in nowise affect the complainant's assertion that the full mortgage debt was due and owing and that the lands were liable for the payment thereof. It would not be a "pleadable defense" in the foreclosure suit; and hence the failure to plead it in such suit cannot estop such defendant against pleading it in a subsequent suit against himself wherein the mortgagee asserts a claim of right to personal judgment against such defendant for the balance of the mortgage debt remaining unsatisfied by the proceeds of the foreclosure sale of the lands. Usbe Building andLoan Association v. Ocean Pier, c., Co., supra.
The suit for personal judgment for deficiency against the subsequent grantee is not a suit for the same cause of action as the foreclosure suit; on the other hand it does necessarily involve and include an assertion by plaintiff or complainant of at least one claim of right which was necessarily involved in his foreclosure suit — to wit, the assertion as to the amount of the mortgage debt due and owing. In the foreclosure suit, however, he asserted a second right, i.e., to collect this amount from the lands; in the deficiency suit he asserts a different right, i.e., to collect it from the defendant personally. As to the first right, which is identical in both suits, the defendant who was also a party in the first suit, is concluded by the former decree — he can only set up allegations as to facts subsequent to that decree, such as payments on account of the mortgage debt made subsequent to the foreclosure. As to the second right — the right to require defendant personally to make payment — that right was not involved in the foreclosure suit and the defendant can set up any and all rights which he may claim (other than anything seeking to controvert the amount of the mortgage debt remaining unpaid at the time of the foreclosure) as tending to deny, defeat or modify personal *Page 440 
liability on his part to the plaintiff or complainant. In this respect the former decree is not an estoppel against him (unless such rights were in fact expressly pleaded, tried and determined in the former suit — Andrews v. Stelle, 22 N.J. Eq. 478), because these rights were not involved in the former suit and hence not determined by the decree therein, by necessary implication although not pleaded. Let us consider the defenses in the present case, in the light of these principles.
The first defense is that Haveson, the original obligor and mortgagor, is not a party to the present suit. It is contended that the personal liability of the subsequent assuming grantees to the holder of the bond and mortgage is based upon the principle of subrogation of the mortgagee to the rights of the mortgagor against the assuming grantees, and that the mortgagor is therefore a necessary party. Clearly none of the claims of right in this behalf were in anywise involved in the issues in the foreclosure. This defense goes only to the question of the personal liability of defendants to the mortgagee; whether or not such liability exists or ever did exist, had nothing whatever to do with the mortgagee's claim of right to collect the mortgage debt from the lands. It would not have been a valid or proper defense to be set up in the foreclosure suit; and it is not barred by the foreclosure from being set up in this suit. Cf.Vanderbilt v. S.W. Holding Co., 112 N.J. Eq. 584.
The second defense is that the complainant — the holder of the bond and mortgage by mesne assignment from the mortgagee — was, and is, a mere agent or naked trustee for Haveson, who was the original obligor and mortgagor; that the interests of both debtor and creditor therefore became (equitably) merged in one and the same person at the time the debtor's agent became the holder of the bond and mortgage, and that then and thereby "the obligation on the bond" was extinguished.
If this defense be considered strictly according to the language in which it is pleaded, it would seem clear that it is barred as a defense in this suit by the foreclosure decree. *Page 441 
"The obligation on the bond" means the entire indebtedness evidenced by the bond and to secure which the mortgage was given — the mortgage debt. If the entire obligation or debt for which the mortgage was given as security had become extinguished prior to the foreclosure then complainant would have had no right to foreclosure decree against the lands. Such extinguishment would have been a complete disproof of complainant's allegation of an indebtedness due to her, for the payment of which the lands were liable. It could, and should, have been pleaded in the foreclosure suit. It cannot be interposed here. The foreclosure decree is conclusive against these defendants that the mortgage debt was not extinguished by the assignment to complainant of the bond and mortgage.
If the defense were to be considered not as referring to the entire mortgage indebtedness, but as intended to refer only to "such obligation on the bond as existed beyond and apart from the obligation for which the lands were liable," then the defense would of course not be barred in the present suit. Its validity and efficacy, in that contingency, will be considered later.
The third defense is that the personal liability of the defendants, for payment of any portion of the mortgage debt remaining unsatisfied by the proceeds of the foreclosure sale, was extinguished or reduced by the act of the holder of the mortgage in releasing a portion of the mortgaged premises from the lien of the mortgage (and thereby from liability for the payment of the mortgage debt). This defense could in nowise be deemed a valid or proper defense to the foreclosure suit; it in nowise disputes the amount of the mortgage debt due and owing to the holder of the mortgage nor the liability (for the payment of that amount) of the lands which complainant sought to have sold for the payment. It is a defense only against the claim of personal liability of defendants. It is not barred by the principle of res adjudicata.
This defense against liability for deficiency on the bond is of course different and distinct from a defense against the *Page 442 
liability of the lands, arising out of the same circumstances but available only in the foreclosure suit. The two may readily be confused. Suppose A owning two lots worth $4,000 each gives to B a bond and mortgage of $5,000 on the two lots, and later conveys the lots to C, who assumes payment, and later conveys one of the lots to D who does not assume payment; thereafter B releases D's lot from the lien of the mortgage, and then commences foreclosure against C's lot. Manifestly it would be unjust to C, that his lot should be compelled to bear the burden of the entire $5,000 debt. The two lots together were the primary "debtor" for the $5,000 debt. The mortgagee's release of one can be set up by the owner of the other (or by any other party interested) as a defense in the foreclosure suit — by way of reduction of the mortgage debt "owed" by the remaining lot. Harrison v. Guerin, 27 N.J. Eq. 219; Beardsley v. Empire Trust Co., 96 N.J. Eq. 212;124 Atl. Rep. 457; Turner v. Ridge Heights Land Co., 92 N.J. Eq. 64 (atp. 77); 111 Atl. Rep. 675. Cf. also Southern v. Pearson,28 Atl. Rep. 450 (not reported in N.J. Eq.). But even if such defense is not made in the foreclosure suit, and decree therein establishes the mortgage debt at $5,000 and that the remaining lot be sold to procure payment thereof, it is still open to A, in a subsequent deficiency suit against him by B, to set up the release as a defense, not to the liability of the mortgaged premises but to his personal liability as surety for the original debt.
Considering this defense, then, in relation to the facts in the present case, it appears by the proofs or admissions that the holder of the bond and mortgage, subsequent to the deeds by which defendants acquired title to the mortgaged premises and assumed the payment of the mortgage debt, released (to the State of New Jersey) the front thirty-four feet of the mortgaged premises, from the lien of the mortgage without the knowledge or consent of the defendants.
Under the law in this state the mortgaged premises are primarily liable for the payment of the mortgage debt. As to any amount of such debt not satisfied out of the mortgaged premises, the last grantee who assumed the debt is the principal *Page 443 
debtor, and prior assuming grantees, as well as the mortgagor, are sureties. See Reeves v. Cordes, 108 N.J. Eq. 469;155 Atl. Rep. 547, and cases cited.
A partial release of the principal debtor discharges the suretypro tanto (50 C.J. 184), and a release of property of the principal debtor held as security for the debt will discharge the surety pro tanto. Van Hoesen v. Gelfen, 103 N.J. Eq. 234;143 Atl. Rep. 137; affirmed, 110 N.J. Eq. 69; 158 Atl. Rep. 343;Paulin v. Kaighn, 29 N.J. Law 480. Hence, whether the mortgaged property be deemed itself the principal debtor, or be deemed property of the principal debtor held as security, release of a portion of that property from liability for the payment of the mortgage debt will release the surety's liability, by the amount of the value of the portion of premises so released.
It is contended by defendants that such partial release should operate as a complete discharge of the sureties from all liability, but this seems quite unjustifiable on principle as well as authority. All that can be asked is that the full value of the portion of premises released be credited against the liability of the surety for the mortgage debt. In any case where there is doubt as to the amount of that value, it would seem equitable to give the surety who has not been consulted as to that value, the benefit of that doubt. Cf. Paulin v. Kaighn,supra.
In the instant case there is an additional reason why the surety should not be completely discharged, and that is because the act of release was essentially involuntary. If the holder of the mortgage had not executed the release, the state could and would have condemned.
It resulted from the widening and grading of the highway that the lots in question were left a little below the grade of the street; and defendants urge that this was an additional damage to the remainder of the mortgaged premises, and an additional reason for complete discharge of the sureties. It is apprehended that this stands upon precisely the same footing as the actual release of the front of the lots. It was all a single transaction. The state took the front of *Page 444 
the lots and graded so as to cause a consequential damage to the remainder of the lots. For that, the state was legally obligated to pay the fair value — if demanded by the owners of the lands. In this case the owners were the holder of the mortgage and the owner of the equity of redemption. As between those two, the holder of the mortgage was entitled to the whole compensation, but must credit it on account of the mortgage debt. If the holder of the mortgage did not insist on receiving the value of the land taken and the damage done, he must nevertheless in equity give credit on that amount, on the mortgage debt, as far as the sureties are concerned. He cannot be generous at the expense of the sureties; on the other hand they can ask no more than the mortgage-holder could have obtained. They can ask no greater credit against the mortgage debt than the full amount by which the value of the mortgaged premises was reduced by the actual taking plus the consequential damage.
That amount in the instant case is fixed at $300. Defendants place the figure at $3,275; complainants place it at $125. The actual price paid by the state was $100. Under all the evidence — considering the locality and nature of the property, the unusually deep frontage before the taking, and the values in the vicinity — I am satisfied that the figure of $300 for the taking and the consequential damage gives defendants the benefit of every doubt. It might indeed well be doubted but that the value of the remainder of the mortgaged premises was fully equal, after the completion of the improved highway, to the prior value of the mortgaged premises.
There is, however, another factor necessary to be considered in determining whether or not defendants are entitled to reduction in the amount of their liability by reason of the release of the portion of the mortgage premises. In order that the act of release shall have that effect it must appear that at the time the release was made the holder of the mortgage had knowledge or notice of the existence of the suretyship — i.e., of the fact that the mortgaged premises had been conveyed and that the grantees had assumed payment of the mortgage debt. 50 C.J. 111.Cf. Gorenberg v. Hunt, 107 *Page 445 N.J. Eq. 582; 153 Atl. Rep. 587; Ward's Exrs. v. Hague,25 N.J. Eq. 397; Vanorden v. Johnson, 14 N.J. Eq. 376; Cogswell
v. Stout, 32 N.J. Eq. 240.
The defense is of course an affirmative defense, and the burden of proof is on the defendants. They do not establish knowledge or notice by the fact of the recording of the subsequent conveyances. Such recording is not constructive notice to the prior mortgagee. Davis v. Cressman, 57 N.J. Eq. 619;42 Atl. Rep. 768; Turner v. Ridge Heights Land Co., supra (at pp. 76,77).
The evidence shows that the mortgage in question was held by the Trust Company as collateral security for a loan by it to Haveson; and further shows that Haveson knew in October, 1928, that Bash was subject to liability on the bond. It may be assumed therefore that at that date Haveson had knowledge or notice of the deed from Bugbee to Bash and Levin; he, of course, had knowledge of the deed from himself to Bugbee; he had notice of the suretyship relation occupied by Bugbee, Bash and Levin. In fact there were two releases executed by the Trust Company — one on December 12th, 1928, and the other on November 30th, 1929; and Haveson joined with the Trust Company in the execution of the second one, but not in the execution of the first. The first release, however, was a complete and valid release by the holder of the mortgage, of the lands in question. The reason for the execution of the second release does not appear; but from the evidence in the cause, it was superfluous and of no effect, because the prior release had already released the lands from the mortgage. Haveson's act in November, 1929, therefore, did not release the lands; that had been done by the Trust Company in December, 1928 — an act in which Haveson had no part, so far as the evidence shows. An attempt was made to show that the execution by the Trust Company was at Haveson's request, but this was not shown, and while it may be deemed probable that such was the fact, it is not a necessary inference by any means, and hence is not to be presumed as matter of law. *Page 446 
It was not shown that the Trust Company had any knowledge or notice of the suretyship of the defendants.
The burden of proof being on defendants, it results that they have failed to establish their defense, and are not entitled to the credit or deduction of the $300.
Considering now the second defense — the alleged merger and extinguishment of "obligation on the bond beyond and apart from the obligation for which the lands were liable" — it is deemed that no such merger or extinguishment took place. Obviously no merger or extinguishment took place by operation of law, for complainant, Hannah Mann, and the obligor-mortgagor, Harry Haveson, are two different persons. No merger or extinguishment took place, therefore, unless it be here determined that such must be deemed in equity the result of the acts of the parties. No basis for such determination is pointed out by defendants or is otherwise apparent.
Certainly it was not the intent of the parties. The very fact that Mr. Haveson had the assignment of the bond and mortgage made to his agent or trustee instead of to himself, indicates an intention not to have merger and extinguishment take place. Neither did anything take place which can be deemed to give the defendants the slightest shadow of any right to claim that they are entitled to have a merger and extinguishment decreed.
Let us simplify the consideration of the matter, by assuming that there was only one intermediate grantee. When the grantee took title from the mortgagor and assumed payment of the mortgage debt he obtained a property worth (say) $7,500 by paying $2,500 and promising to pay $5,000. He contracted with the mortgagor to pay the $5,000 that the mortgagor had borrowed, and to save the mortgagor harmless from liability for that debt. By a fair bargain he took the mortgagor's place. As between the two of them, therefore, the mortgagor was no longer the debtor in respect of that debt; his relationship of debtor was (so far as concerns the grantee), thereby extinguished. It became the duty of the grantee, in equity, to pay that debt; a duty recognized indeed at law as well as in equity. Holland Reform School *Page 447 Society v. DeLazier, 85 N.J. Eq. 497; 97 Atl. Rep. 257;Crowell v. Hospital of St. Barnabas, 27 N.J. Eq. 650 (at p.655); Bolles v. Beach, 22 N.J. Law 680.
If then, later, the original mortgagor (no longer the debtor) buys the bond and mortgage from the original mortgagee, there is no equitable reason why he should not receive payment from the grantee of the debt which that grantee bound himself to pay, and which payment is no more onerous upon that grantee if it be made to one man rather than another. The mortgagor has become the creditor, and the grantee has become the debtor. Equitable principles do not require an extinguishment and cancellation of the debt; on the contrary they do require that the grantee should pay as he contracted to do.
The defense remaining to be considered is that complainant "has no cause of action" because the original obligor and mortgagor, Haveson, is not a party to the present suit.
Defendant's argument is that the right of the holder of the mortgage to require payment from the mortgagor's grantee (who assumed and promised the mortgagor to pay the mortgage debt) rests solely upon the principle of equitable subrogation (Crowell v. Currier, 27 N.J. Eq. 152), and that a complainant cannot be subrogated to the rights of a defendant under a contract (of defendant) with a third person, in a suit in which such third person is not a party. Citing 37 Cyc. 388 (d).
The form of that statement, however, has been changed in the present revision of that authority — 60 C.J. 831 § 134 — and the statement is added that "ordinarily persons against whom no relief is sought and who will not be effected by the proceedings are not necessary parties thereto." Where it is necessary (in order to effectuate a decree establishing subrogation), that a particular person shall be bound by the decree, that person must, of course, be a party to the suit; otherwise the decree would be nugatory. Cf. Shawell v. Shawell, 90 N.J. Eq. 452;108 Atl. Rep. 59. But where the decree simply establishes that certain facts have occurred and that under well established equitable principles, A thereby *Page 448 became subrogated to the rights formerly held by B, and is entitled to enforce them against C — no relief being sought against B — it is not perceived that B is a necessary party.
In Pruden v. Williams, 26 N.J. Eq. 210, it was expressly held that the mortgagor is not ordinarily a necessary party in such a suit as the present; and this was impliedly approved by the appellate court in Green v. Stone, 54 N.J. Eq. 387;34 Atl. Rep. 1099.
In the instant case it is undisputed that Haveson made the bond and mortgage; that he conveyed the mortgaged premises to a grantee who assumed payment of the mortgage debt; and there are few rules more firmly established in our jurisprudence than the one that in such a case that grantee thereby became in equity the principal debtor and the mortgagor became a surety. The decree will simply establish that that was the result in equity, and that the mortgage-holder thereby obtained the right to require payment from the grantee; and will decree the grantee to make such payment to the mortgage-holder.
To hold that the equitable right of the mortgage-holder to sue the grantee does not arise without, and until, there be a decree as between the mortgagor and the grantee that the mortgage-holdershall be subrogated to the rights of the mortgagor, would be an unnecessary refinement of technicality. If relief were sought against Haveson in this suit, or if it were necessary for the protection of the present defendants, Haveson could be brought in; but under the circumstances here present there is nothing which makes such a course necessary or advisable.
Complainant is entitled to decree for the full amount against all three defendants. Defendant Bugbee, by counterclaim against Bash and Levin, asks decree establishing the liability as among the defendants. As between themselves Bash and Levin are primarily liable, and Bugbee secondarily; he will be entitled to recover from Bash and Levin such portion of the decree as he is compelled to pay to complainant. *Page 449