CHARLES W. L. ROCHE

*v.*

CAROLINE D. HISS et al.

[Decided March 12th, 1915.]

1. A transaction whereby complainant procured for defendants an option on land under an agreement providing for its purchase by a company to be organized, the issue of two hundred and fifty shares at $100 each to defendants for $24,000 cash and $1,000 for their assignment of the option to the company, and the defendants' advance of an additional $15,000 for working capital, in consideration of which complainant was to develop and sell the property, and providing that defendants should sell him forty-nine per cent. of the stock so acquired by them, payable within ten years, with the privilege of taking over all or any of the stock at par, to cancel the agreement as to any part of the stock not paid for within one month after notice of non-payment of interest, was not a "loan," which is the previous or contemporaneous advance of money, and the subsequent continued existence of a debt to be repaid in money.

2. Such transaction was simply an agreement for the purchase and sale of stock belonging to the defendants.

3. Under such agreement even if construed as a loan to complainant of money payable in ten years or sooner at his option on the condition that, on thirty days default in interest, the whole principal might, at the lender's option, become due, a court of equity could not deprive the lender of the benefit of the contract for prompt payment of interest but must enforce it in the absence of mistake, accident, or defendant's own default, and this would be true even if the lender was obliged to ask the equitable assistance of the court in proceedings to collect the entire principal sum as due because of the default, since the right to enforce such provision for prompt payment of interest is part of the real security for the loan.

4. Complainant, party to an agreement with defendant for the purchase and sale of stock belonging to the defendant, in a suit to enjoin defendant from forfeiting or canceling the agreement, whether treated as a purchaser or as a borrower from defendant, could ask equitable relief against the legal contract only to work out real and substantial equity; and where his substantial equity as purchaser was that of specific performance of the contract, and his equity as borrower was to have the stock returned to him on his payment of the purchase price, his bill, not offering either to carry out the contract and complete the sale or to pay the purchase price of the stock was fatal to the right to enjoin defendant's enforcement of the forfeiture provision of the agreement, or to have it canceled.

---

On application for preliminary injunction. Heard on bill and affidavits and answering affidavits.

*Mr. Borden D. Whiting,* for the complainant.

*Mr. Charles A. Reed,* for the defendants.

EMERY, V. C.

Complainant's bill is filed for relief against the forfeiture or cancellation of a written agreement, dated February 18th, 1909, for the purchase of stock in a company organized by the parties to the agreement. Complainant, Charles W. L. Roche, was an operator in the development of suburban real estate, and Dr. Philip Hanson Hiss, Jr., and his wife, the other parties to the agreement, advanced, or agreed to advance, capital for the purchase, development and putting into market a seventy-acre tract of land near Short Hills, and the defendant company, the Short Hills Realty Company, was organized for the purpose of carry-

ing out this mutual agreement. Complainant had procured for Dr. Hiss an option to purchase the property. This agreement provided for the purchase by the company of the tract for $76,-000, $51,000 of which was to remain upon mortgage, the capitalization of the company at $125,000 (one thousand two hundred and fifty shares at $100 each), the issue of two hundred and fifty shares to Dr. and Mrs. Hiss for $24,000 in cash and $1,000 for the assignment to the company of the option for purchase, and the further advance by Dr. and Mrs. Hiss of $15,000 additional for working capital. The affidavits on both sides agree that it was supposed at the time that this would be a sufficient amount for working capital. Complainant was not to advance money to the company or purchase from it any stock, but was, under the agreement,

"to use his best efforts, as an officer or employee of said corporation, in assisting said corporation to develop and sell said property and in promoting the interests and welfare of said corporation."

The agreement, however, provided for the sale of part of their stock by Dr. Hiss and wife (parties of the first part) to complainant (party of the second part) as follows:

"1st. The said first parties agree to sell to said second party, and the said second party agrees to purchase from said first parties, forty-nine per cent. of all the shares of stock of said corporation acquired by them in the manner hereinabove specified, in consideration of a sum equal to the par value thereof, to be paid by said second party on or before the expiration of ten years from and after the date of this agreement, subject, however, to the other conditions and covenants herein contained, the intention of the parties being to enable said second party to purchase, subject to the conditions of this contract, forty-nine per cent. of the said four hundred shares of stock, or of so much thereof as they may jointly acquire in the manner indicated.

"2d. The said second party shall have the privilege of taking over all or any portion of the said shares so to be purchased by him at any time during said period of ten years upon paying to said first parties a sum equal to the agreed price of such shares, as hereinabove stated, with all interest accrued and unpaid upon such sum at the time of such payment."

Interest was to be paid on April and October 1st, on the unpaid purchase-money; the title to the shares agreed to be sold,

with the right to vote, was to remain in the vendors until paid
for, when the title was to be transferred, and a provision for
cancellation was made as follows:

"6th. *It is, however, provided and agreed* that the parties of the first
part shall have the right to cancel the agreement to sell herein contained
as to any portion of said shares so agreed to be sold and not paid for at
the expiration of said ten-year period, or as to any portion thereof not
paid for within one year after the death of said second party within
that period, or as to any portion thereof not paid for within one month
after a written notice to said second party of his non-payment of the
interest falling due on any of the days hereinabove stated for the pay-
ment of interest on said purchase price, or upon the second party's
severance of his active connection with said corporation as its officer or
employee, or upon his failure without just cause, to use his best efforts,
as an officer or employee thereof, in assisting said corporation to develop
and sell said real property, and in promoting its welfare and interests,
or upon the assignment by said second party of any of his interest in
this agreement, or upon his transfer of any portion of the stock acquired
by him hereunder, except as collateral security for a loan or other obli-
gation, whether said assignments occur by the act of said second party
or by operation of law; and no other act upon the part of said first
parties shall, in any of such cases, be necessary so to cancel said agree-
ment than a written notice of their election so to do to the second party,
or his legal representatives."

And the agreement contains this further provision, which may
have a bearing upon the effect of controlling the right to cancel:

"8th. *It is further mutually agreed* between the parties that neither
party, during the ten-year period above stated, shall sell any of the stock
acquired by him or her under this agreement, without first giving to the
other party the right, for thirty days, to purchase the same at the same
price at which such party may contemplate a sale thereof."

The company was organized under the agreement, and com-
plainant became its president and the manager of its business
at a salary of $150 per month. Dr. and Mrs. Hiss advanced,
not only the $40,000 for the purchase of the stock under the
agreement, but also an additional $40,000. Dr. Hiss died in
February, 1913, leaving his wife his executor.

By parol arrangement between the parties after the agreement,
the date of interest payments was made the 1st day of July
and January, instead of April and October. Complainant's

payments were not made promptly, and when delayed, he seems
to have voluntarily paid compound interest, in consideration of
the accommodation.

In February, 1913, he paid the interest due up to January 1st,
1913, but the money for this payment was procured on a loan
by complainant from a third person, guaranteed by Mrs. Hiss,
and according to Mrs. Hiss's account, this was obtained while her
husband was ill, and in order to relieve him from worrying over
the non-payment of interest by complainant. No payment of
interest was made in July, 1913, and on November 5th, 1913,
Mrs. Hiss, as executor and individually, by letter to complainant,
notified him that the interest had not been paid to her since
January 1st, 1913, and she therefore demanded payment at
once.

On November 10th complainant replied to this demand,
saying:

"If my back salary, as owing me by the Short Hills Realty Company,
was paid me, I could send you a check for the deferred interest, and
will be glad to do so, but my powers to pay this has been more or less
taken from me by those who seem to have been placed in charge of the
management of the Short Hills Realty Company, as I understand the
Treasurer has been directed not to sign any check for my salary."

On November 12th Mrs. Hiss replied, stating "as to the ques-
tion of salary, the Short Hills Realty Company has no money to
pay any, and it was at my request that they were discontinued,
as I am unable to advance anything for the same." This cor-
respondence took place before the expiration of the thirty-day
limit fixed by the agreement, the complainant in the meantime
continuing his connection with the company as president. Dr.
Hiss, during his lifetime, was vice-president and treasurer. Mrs.
Hiss was not an officer or director of the company, but as the
executor of her husband, and in her own right is now the holder
of the entire capital stock issued, excepting one share held by
complainant. On December 15th, 1913, Mrs. Hiss, individually
and as executrix, served a written notice upon complainant, re-
ferred to in the bill and set out in defendants' affidavits in full,
as follows:

"NEW YORK, December 15th, 1913.

"*Charles W. L. Roche, Esq.,*
  *165 Broadway,*
    *New York, N. Y.*

"DEAR SIR—Under a certain agreement entered into with you by Philip Hanson Hiss, Jr., and myself, which agreement bears date the 18th day of February, 1909, we agreed upon certain conditions therein set forth to sell to you certain shares of stock of The Short Hills Realty Company.

"Under said agreement you contracted to pay to the said Philip Hanson Hiss, Jr., and myself, on the first days of April and October in each year, as interest on the agreed purchase price of said shares, a sum equal to six per cent. per annum upon such portion of the total purchase price of said shares as should remain unpaid upon such days.

"I hereby notify you that in view of the fact that you have failed and neglected to pay the amount due under said agreement as interest on the first days of April and October, 1913, and that more than one month has elapsed after a written notice to you of your non-payment of such interest, I, the undersigned, Caroline D. Hiss, individually and as executrix of the Last Will and Testament of Philip Hanson Hiss, Jr., have exercised the right given to said Philip Hanson Hiss, Jr., and myself under said agreement, and have cancelled the agreement therein contained to sell said shares of stock of The Short Hills Realty Company not paid by you.

"Very truly yours,

"CAROLINE D. HISS,
"*Individually and as Executrix of the Last Will and Testament of Philip Hanson Hiss, Jr.*"

Complainant was not elected as director or officer of the company at the annual election subsequently held in January, 1914, and since that time has had no connection with the company. On January 16th, 1914, complainant (as appears by his affidavit, not contradicted by Mrs. Hiss) tendered the interest to her, and she rejected it.

Complainant's sole excuse for non-payment of the interest, as given by his bill, is financial inability. He gives as one cause of this, the failure of the company to pay his salary of $150 a month, after July 1st, 1914, a financial condition similar to that of the defendant, who swears that the company, from which she has never received any return whatever, had no money for payment of salary, unless she advanced it, and that she on her part was unable to advance any more.

Inability to pay interest at the time agreed on can of itself have no more bearing on the equitable right to extension than on the legal right. Mrs. Hiss was not required (unless she

chose) to advance money to the company to pay complainant's salary, and complainant within the thirty days' limit fixed by the contract for terminating the agreement was notified that, so far as Mrs. Hiss, or her advice to the officers was concerned, he could not rely on her advancing any more money. Up to the time of writing this letter of November 10th, 1913, complainant does not seem to have considered his salary from the company as at all in the nature of an offset for the interest, for he seems to have received and expended all of his salary from January 1st, 1913, up to July 1st, 1913, without paying the interest due on the latter date. And it further appears that complainant, by his connection with the brokers through whom the sales of the company's lands were made, received (but with the knowledge of his associates) benefits from his position as manager of its business in addition to his salary. The amounts estimated to be sufficient for the working capital proved insufficient, and Dr. Hiss and wife, in order to protect their large investment, were obliged to increase their advances, until, as Mrs. Hiss says, they amounted to $40,000, and she can advance no more. So far as excuse or explanation of delay in payment of interest is concerned, the case stands merely on an inability of the complainant to pay, for which the defendants were not responsible, and with which they are not to be affected in the exercise of their equitable rights. Complainant has made no payments on account of the principal sum of the purchase price.

The question, therefore, is, whether on the affidavits the complainant shows such a case of probable relief by final decree as to entitle him to a preliminary injunction pending the hearing. Complainant prays to be relieved from the forfeiture or right of cancellation given by the agreement for non-payment of the interest, and not only to be relieved from this forfeiture, but to have a decree that the agreement to sell the shares is to continue in force hereafter up to the expiration of the ten years. The bill, it will be observed, does not pray for the specific performance of the agreement.to sell, nor does the complainant, by the bill, offer as a condition or term of relief on this bill, to purchase the stock before the expiration of the ten years, or even at that time, or to give any security that he would do so. Nor did he

do so at the hearing, but, on the contrary, at the hearing on the motion, when this point was suggested, counsel claimed to stand on this bill, insisting solely on an equitable right to be relieved from the past forfeitures on now paying the interest due, and to have the additional declaration that the agreement is reinstated and now continues, giving him the option under its terms, to call for performance within the ten years, or to wait until the end of the period, and, so far as this suit is concerned, leaving him then the legal right to perform or not, as he may then elect. Had specific performance of the agreement been now sought, notwithstanding the forfeiture, a case altogether different would be presented, and from defendant's affidavit such an offer would probably have been accepted.

Complainant claims in his bill (paragraph 7) that the meaning and intent of the contract and of the parties was that the sum representing the par value of the stock to be conveyed to complainant was a loan from Dr. Hiss and wife to complainant at six per cent. per annum, secured by complainant's stock so held for him by Dr. Hiss and wife. The entire transaction, however, lacks the fundamental basis of a loan, viz., the previous or contemporaneous advance of money and the subsequent continued existence of a debt to be repaid in money. Under this agreement there was no advance of money to complainant, and there is no debt or obligation for the payment of money on his part except as arising from the subsequent sale and transfer of stock. It is, therefore, in this respect, purely and simply an agreement of purchase and sale of stock belonging to defendant, and not an advance or loan of money secured by stock belonging either legally or equitably to complainant. But, assuming that the agreement, either upon its face or by evidence which complainant may produce at the hearing, could be construed as a loan, and that the provision for forfeiture is intended and should be treated solely as an additional security for the payment of money loaned or advanced, the complainant in such case stands in the position of having borrowed money from defendant, payable in ten years (or sooner at his option), on the terms that on thirty days default, the whole principal, at the option of the lender, is to become due. Had this been the express written con-

tract, a court of equity could not deprive the lender of the benefit of the contract for prompt payment of interest; and, in the absence of mistake, accident or proof of facts connecting defendant with responsibility for the .default, must give her the benefit of it. And this is the case even when the lender is obliged to ask the equitable assistance of the court by proceedings to collect the entire principal sum as due because of the default. *Baldwin* v. *Van Vorst (Chancellor Williamson, 1856), 10 N. J. Eq. 577, 582; Spring* v. *Fisk (Chancellor Zabriskie, 1870), 21 N. J. Eq. 175, 178; Arkenburgh* v. *Lakeside, &c., Association (Vice-Chancellor Pitney, 1897), 56 N. J. Eq. 102, 109; Security Trust Co.* v. *New Jersey Paper Board, &c., Co. (Court of Errors and Appeals, 1898), 57 N. J. Eq. 603, 607.*

The right to enforce such provisions for prompt payment of interest, especially in loans for a term of years, is part of the real security for making the loan, to which the lender is entitled by the mutual contract of loan. Both Chancellor Zabriskie and Vice-Chancellor Pitney, in their respective opinions in the above cases, say the enforcements of such provisions in cases of loans are not strictly forfeitures, but are to be treated as terms of the loan made by contract of the parties, and to be controlled or varied by a court of equity only as other contracts may be varied. Chancellor Runyon, on the other hand, in *Wilson* v. *Bird (1877), 28 N. J. Eq. 352,* speaks of the enforcement as a forfeiture. The defendant in this case is not seeking the equitable aid of this court for the collection of a loan, but, treating the contract as an agreement for purchase of stock, claims to have canceled the contract, under the provisions by which time, in regard to payment of interest, was expressly made part of the contract. It is the purchaser, not the vendor, the borrower and not the lender, who is here asking the equitable remedy of the court, and treated either as a purchaser or as a borrower, a complainant can ask equitable relief against a legal contract or status only for the purpose of establishing or working out real and substantial equity. As a purchaser, complainant's substantial equity is that of specific performance of the defendant's contract to sell, and except in connection with the enforcement of this substantial equitable right by now offering to carry out the contract and

complete the sale, there is no separate equity here which would entitle him to be relieved simply from the effect of the past defaults and to have the contract then continued subject to future like defaults. On the other hand, if he be treated as a mortgagor or borrower, his substantial equity is to have his stock given to him, on his payment now of the purchase price. In either case, the bill should offer now to pay the purchase-money. The omission of this offer from the bill, coupled, as it is, with the admission at the hearing that the whole relief sought and claimed is the revival of the contract and a decree for and continuance under the original provisions, for the full period of ten years at the option of the complainant, without now paying or securing the purchase price, is fatal to ultimate relief on this bill, and if my judgment on this point is correct, complainant is not entitled to a preliminary injunction. Had such offer been made, defendant might have waived any right to cancellation to which she was entitled.

The mere payment of interest for several years was relied on as giving rise to a special equity against the right to enforce the benefit of the forfeiture, but, under the facts shown, this cannot be considered as having such effect, whether the contract is to be treated as a purchase or as a loan. For during the time complainant paid interest, he was also under the contract an officer of the company, and received a salary, and, in addition to this, received benefits by reason of his control or management of the sales of the company. These benefits secured to him a large amount over the interest he agreed to pay, and would of themselves prevent the payment of interest giving rise to any special equity against forfeiture.

The injunction will be denied.