Complainant sues to foreclose three mortgages, respectively, securing bonds for $5,000, $5,000 and $25,000, made by Isaiah Birks on September 1st, 1925, and payable in five years with interest at five per cent., payable semi-annually. Complainant alleges its election, under the provisions of the bond and mortgage, to declare the principal immediately due and payable, because of non-payment of taxes by the defendant (which is a subsequent grantee for the mortgagor). Admittedly the taxes for 1927, 1928 and 1929 are unpaid. There is no dispute as to the facts; the issue is one of law — whether under the provisions of the bond and mortgage and the existing facts, the complainant had the right against the present owner of the mortgaged premises, to accelerate the maturity of the principal.
No part of the principal has been paid; the interest has been paid up to the last due date; complainant has paid insurance premiums which it is entitled to have added to the principal.
Each bond contains the provision, inter alia, that should any tax be imposed on the mortgaged premises and remain unpaid and in arrears for sixty days, then after the expiration *Page 99 
of said sixty days the entire principal sum (and all arrearage of interest) shall, at the option of the mortgagee, become immediately due and payable.
The condition of each mortgage is, that if the mortgagor
"do and shall well and truly pay * * * the sum of five thousand dollars in five years from the date hereof, with interest * * * together with all * * * taxes which may be assessed upon the money or obligation hereby secured to be paid or upon this mortgage — provided that if any default shall be made in the payment of any installment of interest for thirty days after the same becomes due and payable as aforesaid, the aforesaid principal sum, with all arrearages of interest thereon, shall, at the option of [the mortgagee] become due and payable immediately thereafter, although the time above limited for the payment thereof may not then have expired — according to the condition of a certain bond bearing even date herewith, executed by Isaiah Birks, and without any deduction or defalcation for taxes, assessments or any other imposition whatever, then and from thenceforth these presents and said bond or obligation, * * * shall cease and be void."
Each mortgage also contains a covenant that the mortgagor or his assigns will pay all taxes assessed against the mortgaged premises; and an agreement that all taxes that may be paid by the mortgagee, "which shall be assessed upon the money or obligation hereby secured to be paid, or upon this mortgage, with lawful interest thereon," shall be a lien on the mortgaged premises in addition to the amount of the bond and payable on demand.
There is no other reference in the mortgage to any of the provisions of the bond.
Defendant took title to the mortgaged premises, December 20th, 1927, by deed from a subsequent grantee from the mortgagor, subject to the three mortgages — payment of which it did not assume. It had no knowledge or notice of the provisions of the bonds, other than that which is chargeable to it from the foregoing facts.
The bond and mortgage are, of course, two separate instruments, but both dealing with the same debt. For that debt the creditor has two securities — the promise of the obligor contained in the bond, and the mortgagee's estate or interest in the mortgaged premises. Colton v. Depew, 60 *Page 100 N.J. Eq. 454. But the two securities are both for the one single debt — giving the creditor two remedies for the collection of that debt. The loss of the remedy on the bond by the running of the statute of limitations does not extinguish the debt nor deprive the creditor of his right to collect that debt by pursuing his remedy on the mortgage. Colton v. Depew, supra.
But the payment of the debt by the owner of the mortgaged premises would, of course, deprive the creditor of any right to collect from the obligor; and the payment of the debt by the obligor would deprive the creditor of any right to collect from the mortgaged premises (although the obligor might have such right by subrogation).
In this state, when a bond and mortgage are given for the same debt, although the creditor has the two remedies mentioned, he is prevented by statute from exercising his remedy on the bond until he has exhausted his remedy on the mortgage. If the debt be not paid in accordance with the terms of the contract, he must first sue to foreclose and sell the mortgaged premises. This statutory restriction arose, of course, because of the fact that in so many instances (probably the great majority of instances) the mortgaged premises are conveyed to third parties subject to the mortgage. The grantee obtains a $10,000 property subject to a $5,000 mortgage and pays only $5,000 for it. In all fairness the subsequent grantee should be required to pay the $5,000 mortgage, or let the mortgaged premises be sold for that purpose, before the original mortgagor and obligor should be called upon to pay on the bond.
The question then arises — as it does in this suit — when does the creditor obtain the right to foreclose and sell the mortgaged premises. One naturally looks to the contract in that behalf. The bond being the written promise or obligation to pay, and the mortgage being given as security for such payment, one would naturally and logically look to the bond, as the evidence of the contract to pay, for the terms and conditions of that contract; and one would naturally and logically expect the mortgage to provide that the interest conveyed to the mortgagee should cease and be determined *Page 101 
if the debtor's contract to pay should be performed in accordance with the terms and conditions of the contract to pay, i.e., the bond. It is obvious that if mortgages were drawn in that simple way, the many cases that are litigated because of discrepancies between the terms of a bond and an accompanying mortgage would never arise. It is also obvious that if the bonds and mortgages and the mortgaged premises always, or even usually, remained in the ownership of the original parties, there would be no reason for drawing a mortgage in any other than that simple form. When mortgaged premises are sold, however, the purchaser naturally wants to know the terms and conditions of the contract for the performance of which those premises are subject to be sold — and what he must do, or be prepared to do, in order to retain the ownership of such lands. The frequency of the sale of mortgaged premises, and the almost equal frequency of the transfer of the bonds and mortgages, are the causes which gave rise to the practice of incorporating in the mortgage, recitals of the terms and conditions of the contract as contained in the bond — in order to eliminate the time and trouble involved in obtaining an inspection of the bond as a part of negotiating a sale of the mortgaged premises. This practice would be entirely unobjectionable if the recitals were correctly transcribed. The difficulties arise — and they are many — because bonds and mortgages are so carelessly drawn — often by real estate dealers or their clerks having either no knowledge of the law, or that "little learning" which is so dangerous. Bonds and mortgages are customarily printed by the legal stationers in pairs to accompany each other, in several various forms to provide for the various terms and conditions which may be desired in any particular transaction. In the instant case not even care enough was taken to see that these matched forms were used — the bond forms used were appropriate for one kind of contract and the mortgage forms were those intended for a different contract.
The bond and mortgage being given both at one time as a part of one transaction — two securities for a single debt — both must be construed together (where there is an apparent *Page 102 
discrepancy between them) in the endeavor to ascertain the actual terms and conditions of the contract. "The terms of each are qualified by the applicable provision of the other." SecurityTrust and Safe Deposit Co. v. New Jersey Paper Board, c., Co.,57 N.J. Eq. 603 (at p. 606).
In the instant case, if the suit were between the original parties to the instruments, it would seem clear that the right to foreclose had duly accrued to the mortgagee. The right to accelerate maturity for non-payment of taxes on the mortgaged premises is expressly given in the bond. The mortgage was given as security for the performance of the bond. The condition of the mortgage — broadly speaking — is that it shall be void if the mortgagor shall perform "according to the condition of a certain bond, c." There is a parenthetical clause reciting certain of the special provisions of the bond, but this clause, in my opinion, was not intended to, and does not, operate as contradicting the terms of the bond nor as withholding from the mortgagee the right to accelerate maturity for non-payment of taxes and to foreclose for non-payment at the accelerated date. The parenthetical clause in the condition of the bond does not, in terms, purport to express all the conditions under which the right to foreclose shall accrue; and it would seem quite evident that the omission to recite in the mortgage all the terms of the bond was negligent and accidental, on the part of both parties, and not by intent on the part of both or either party to differentiate the contract secured by the mortgage from the contract or obligation of the bond.
This suit, however, is not between the original parties; the defendant is a subsequent grantee of the mortgaged premises, who had no actual knowledge of the conditions of the bond, except as recited in the mortgage, until after the commencement of this suit. In view of this fact, and of the further fact of the incomplete recital in the mortgage of the terms of the bond, and the general practice and purpose of reciting the terms of a bond in an accompanying mortgage — it would seem that the defendant was entitled to rely on the recital in the mortgage as being complete. The original *Page 103 
parties intended (as has already been found) that the mortgagee should have the right to foreclose at accelerated maturity for non-payment of taxes, and intended to recite that in the mortgage; by negligent mistake they omitted that recital in the mortgage, and thereby, in effect, represented to a subsequent grantee that there was no such provision or right of foreclosure. An equitable estoppel therefore arises in favor of defendant against the enforcement by the negligent complainant of the right to foreclose which it otherwise would have had — to the extent that such enforcement would result in injury to the defendant. Under such circumstances, the strict enforcement of the complainant's right to foreclose would be inequitable. This court will not enforce such right when such enforcement would be inequitable. Security Trust, c., Co. v. New Jersey PaperBoard, c., Co., supra (at p. 607).
If the mortgage condition had been in the simple form hereinbefore referred to — without any recital of any of the terms of the bond — doubtless the subsequent grantee would be held obliged, at his peril, to ascertain the terms of the bond by inquiry of the holder thereof; there would have been no misleading of the subsequent grantee by the mortgagee and no inequitable reason to restrict its right to foreclose.
There remains, however, a further point, i.e., to what extent the estoppel operates?
There is nothing whatever in the evidence to indicate or to justify any presumption that the defendant would not have taken title to the premises if it had known or been informed of the mortgagee's right to foreclose for non-payment of taxes. That being so, it seems clear that there can be no justification for a complete and absolute denial of such right to foreclose. There is nothing in the case to justify a finding that defendant has been prejudiced to any greater extent than in not having had the benefit of the sixty-day period of grace for the payment of the taxes, as provided in the bond — from and after it obtained actual knowledge of the provision giving complainant the right to foreclose for non-payment of taxes. *Page 104 
It appears, therefore, that the action was prematurely brought; but it also appears that actual notice of the provision of the bond was obtained by the defendant subsequent to the institution of the suit. I do not recall that the evidence shows the date of such notice. Certainly defendant had it on the date of the hearing, if not before — and therefore full equity will be done to defendant if he be given sixty days from that date.
If within ten days defendant shall pay the taxes, the bill will be dismissed; otherwise complainant will be entitled to decree.