The decision of this case is complicated by the fact that none of the witnesses for either side impressed me favorably, save Mr. Samuel Avidan and his brother, Alexander. The suit is brought to stay an action on a bond executed by complainant, Harry Burack, and his brother, Ephraim, to Edward Mayers, since deceased, on the ground that Harry is only a surety and was released by acts of the obligee. By indenture dated January 24th, 1928, and recorded the next day, Ephraim Burack mortgaged property on Renner avenue, Newark, to Edward Mayers for $4,500, payable in two years. The mortgage recites that Ephraim is justly indebted to Mayers in the sum mentioned, secured to be paid by his bond, and the mortgage contains his covenant to pay the same sum of money and interest. The bond, which all parties agree is the one referred to in the mortgage, was originally drawn as the bond of Ephraim Burack, but before execution the name of Harry Burack as co-obligor was inserted and in some places, though not throughout the bond, "he" was changed to "they" and similar alterations made. The instrument contains this clause: "This bond is given subject to the same terms and conditions as set forth in the mortgage between the parties hereto of even date herewith." This is the bond on which the action at law is pending against Harry. *Page 137 
A bond and mortgage given at the same time in a single transaction must be construed together in the endeavor to ascertain the actual contract; the terms of each are qualified by applicable provisions of the other. Security Trust, c., Co. v.Paper Board Co., 57 N.J. Eq. 603; Church of Sacred Heart v.Pingree Holding Co., 105 N.J. Eq. 97. The bond and mortgage before me, taken together, point rather strongly to Ephraim as the principal debtor. Another circumstance with the same trend is that the loan was made by check of Mayers payable to Ephraim and deposited in the latter's bank account.
Ephraim Burack testified that he alone borrowed the money and used it in his jewelry business; that during his negotiations with Mayers, the latter insisted that he get Harry to go on the bond and this was done; that, when Mayer's attorney, Maurice S. Maurer, had drawn the bond and mortgage, he (Ephraim) went alone to Maurer's office and executed them. He did not get the money at that time, for Harry had not yet signed the bond. The next day Mayers called at the office of the two brothers and gave Ephraim the check for $4,500. Ephraim has been adjudged a bankrupt and cannot respond to the bond. The value of his testimony is materially lessened by two contradictory affidavits to which he swore, relating to the title to the mortgaged property. Though they do not bear directly on the present controversy, they indicate a willingness on his part to swear to whatever appears advantageous at the moment.
Harry Burack, the complainant, testified that he signed the bond at Ephraim's request and that he received none of the loan. He was prohibited from going further into the matter by objection based on section 4 of the Evidence act.
The principal witness for the defendant executrix was Mr. Maurer, who had drawn the bond and mortgage for Mayers. He testified that his client with Harry Burack called and that they told him that Mayers was making a loan to Harry to be secured by property owned by Ephraim A few days later Harry brought the title papers, and still later, when the bond and mortgage had been prepared, he took them to be looked over by his lawyer. The next day he returned with his *Page 138 
brother Ephraim and his lawyer, Samuel Avidan. The papers were then executed. Mayers produced a blank check which he asked Harry to fill out. Harry did so, and Mayers signed it, and handed it back to Harry.
There are circumstances which adversely affect Maurer's testimony. The certificate of acknowledgment on the mortgage and the jurat on the certificate of title are both dated January 24th, 1928. Maurer said that he actually took the acknowledgment and the affidavit January 25th, but that, because of oversight or for some other reason, he did not make the date correspond to the fact. It is also satisfactorily shown that Mr. Avidan was not present when the papers were executed, was not consulted about the transaction, and had nothing whatever to do with it. I should point out, however, that neither the date of the acknowledgment and affidavit, nor the presence of Mr. Avidan, were vital parts of Maurer's story.
It is a fact that the body of the check was written by Harry Burack. The check may have been filled out, signed, and delivered at Maurer's office in accordance with his testimony, or this may have occurred at the Burack office, provided Harry was present. Note that Ephraim, while testifying that the check was handed him at this office, said nothing about Harry being present or filling out the check. Perhaps he had forgotten.
Mr. Alexander Avidan had a conversation with Maurer about the bond and mortgage in January, 1936. Avidan told Maurer that, in his opinion, Harry, as surety, had been discharged from liability. Maurer did not deny the suretyship.
Where two or more persons join in an obligation, any of them may allege and show that he is only a surety without claiming fraud or mistake, or asking for a reformation of the instrument.50 C.J. 64. Therefore the great certainty of proof required in reformation cases is not requisite and suretyship may be established by a mere preponderance of evidence. On the whole case, I am satisfied that complainant was a surety.
He claims to have been discharged by an agreement between Mayers and Ephraim made without his knowledge or consent, extending the mortgage two years. Mere delay in enforcing *Page 139 
the debt does not discharge the surety. Discharge results only from a binding agreement extending the time for payment. Grier
v. Flitcraft, 57 N.J. Eq. 556; Prudential Insurance Co. v.Rosenthal, 109 N.J. Eq. 386. In order that the extension agreement may be binding, it must be based on a good consideration. It is the rule in most jurisdictions that an agreement between debtor and creditor, extending for a fixed time an interest-bearing debt, is a valid contract, in that the promise of a creditor to forbear collection and the surrender by the debtor of his right to stop the accrual of interest by payment of the principal constitute sufficient considerations.Williston on Contracts § 122. This is a rule of much value, constantly relied on in the business world. But complainant's bill alleges, and his brother Ephraim, on whom he relies, testifies that the consideration for the forbearance was the usurious payment to Mayers of $500. This consideration made the extension agreement void and unenforceable. Nightingale v.Meginnis, 34 N.J. Law 461; Trusdell v. Jones, 23 N.J. Eq. 121;affirmed, Id. 554.
Generally, where there are two considerations, one of which is good and the other void, the good consideration will support the promise. But, where the consideration in part is not merely void but is illegal, the whole agreement falls. This, I take to be the basis of the decisions just cited and it so appears more readily in United States Agency v. Handler, 111 N.J. Law 306, where, in consideration of the extension of a bond and mortgage, one not an obligor on the bond agreed to be bound and also paid a bonus of $500. The court held the whole new contract void. Mayers' promise to extend the time of payment never bound any of the parties and did not discharge complainant.
Complainant also asserts discharge on another ground. Mayers' mortgage, at its inception, was subsequent to a mortgage held by the Alliance Building and Loan Association securing bond of Jacob Burack and wife in the principal sum of $18,000. In July, 1933, there was due on this mortgage and for unpaid taxes $19,628. The association held, as collateral security for its debt, shares of its stock with a withdrawal value of $10,942, which, as against the second mortgagee *Page 140 
Mayers, it must credit on its debt before proceeding against the property. Schaefer v. Metzger, 105 N.J. Eq. 307. So it may be said that the net liens prior to Mayers' mortgage were $8,686. Building and loan interest and dues were three months or more in arrears, and taxes unpaid for two and one-half years; the association might declare its mortgage immediately due and payable. In this situation, the mortgage was "recast," the old bond and mortgage canceled, and a new mortgage with bond of Ephraim Burack for $8,900 given to the association. Of the sum loaned thereon, $883 was applied to taxes, $7,803 to the old mortgage, $178 to dues for May, June and July on the new shares, and the balance, $36, for legal expenses. Mayers consented to postpone his mortgage to the new mortgage. Liens prior to Mayers' mortgage were increased by the amount of legal expenses, $36; a mortgage in good standing replaced taxes and old mortgage, both in arrears. It is the postponement by Mayers which complainant relies on to discharge him from his obligation as surety.
When the contract, which the surety guarantees, is changed without the surety's consent, he is discharged. But that rule is not here involved, since there was no alteration of the contract between Ephraim Burack and Mayers. The pertinent principle is this: A surety is entitled to the benefit of all the securities which the creditor holds as indemnity against loss by reason of his suretyship. Philadelphia and Reading Railroad Co. v.Little, 41 N.J. Eq. 519. Complainant had a right to look to the mortgage which secured Ephraim's debt to Mayers. Where a creditor voluntarily surrenders a security or diminishes its value and the contract by which the surety is bound is not changed, the surety is discharged to the extent he is injured and no further.Guttenberg v. Vassel, 74 N.J. Law 553; Vanderbeek v.Tierney-Connelly Co., 77 N.J. Law 664; Van Hoesen v. Gelfen,103 N.J. Eq. 234; 110 N.J. Eq. 69; Mann v. Bugbee, 113 N.J. Eq. 434.
Complainant does not assert that he is injured in the sum of $36 and discharged to that trivial extent but claims to be discharged altogether. He emphasizes that the association surrendered the bond of Jacob Burack and wife and took instead the bond of Ephraim; that the old first mortgage would have been paid off in the *Page 141 
course of four or five years, provided dues were regularly paid, while the new mortgage would not be paid for eleven or twelve years. These facts do not impress me. Clearly the value of Mayers' mortgage was enhanced and not impaired by the recasting of the prior mortgage and the payment of tax arrears. Complainant was not injured.
The bill will be dismissed.