It is an inherent proclivity of this court to decline to lend its aid toward the attainment of a result that would be inequitable or unconscionable. Equity follows the law, but not slavishly nor always. 13 Halsbury, Laws of England 68. Despite the restoration of his security, the complainant declines to relent and insists upon the right to foreclose his mortgage.
On February 20th, 1940, a bond and mortgage were executed and delivered by Pennington Trap Rock Company to the complainant to evidence and secure the payment of *Page 589 
$122,000. By the terms of the instruments the mortgagor obligated itself to make monthly payments of $1,333.33 commencing on March 20th, 1940, and continuing for a period of five years. Thereafter, the balance of the principal is to be reduced and extinguished by monthly payments of $666.67. The indebtedness carries an interest charge also payable monthly of four and one-half per cent. on the unpaid portion of the debt.
It is observed that the mortgagor has made to the complainant fifty monthly payments of $1,333.33 amounting in the aggregate to $66,666.50, thus reducing the mortgage debt to $55,333.50. The mortgagor is not delinquent in respect of the payment of principal or interest.
On April 15th, 1944, taxes assessed against the mortgaged premises remained unpaid. Specifically, they comprised a balance of $156.56 for the year 1942, the sum of $1,967.68 for the year 1943, and $491.92 for the first quarter of 1944, totaling with interest the sum of $2,735.87.
The bond contained the usual so-called interest and tax default clause:
"And it is hereby expressly agreed, that should any default be made in the payment of the said interest, installment of principal, or of any part thereof, on any day whereon the same is made payable as above expressed, or should any tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien be hereafter imposed or acquired upon the premises described in the mortgage accompanying this bond, and become due and payable, and should the said interest or installment of principal remain unpaid and in arrear for the space of thirty days, or said tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien, or any or either of them, remain unpaid and in arrear for the space of sixty days, then and from thenceforth, that is to say, after the lapse or expiration of either of the said periods, as the case may be, the aforesaid principal sum of One Hundred and Twenty-Two Thousand Dollars ($122,000.00) or the unpaid balance thereof with all arrearage of interest thereon, shall, at the option of the said Obligee, his legal representatives or assigns, become and be due and payable immediately thereafter, although the period first above limited for the payment thereof may not then have expired, anything hereinbefore contained to the contrary thereof in anywise notwithstanding, and the said Obligee may at his option, pay such tax, assessment, or water rent in arrear, and the amount so paid shall be added to and become part of the principal sum secured by the said mortgage and by this *Page 590 
Bond, and shall be payable on demand with interest at six per centum per annum."
The parties also chose to embody in the mortgage an article entitled "Article Two. Events of Default and Remedies Thereon." The pertinent part of section 1 of that article reads:
"As provided in the Bond, the indebtedness of the Borrower to the Mortgagee shall immediately become due and payable without notice or demand upon the occurrence of any of certain events therein specified. As further provided in the Bond, the Mortgagee is authorized to declare all or any part of such indebtedness immediately due and payable upon the happening of certain other events therein specified. Specifically (without limitation), the Mortgagee may declare the principal of the Bond and of all such indebtedness to be immediately due and payable * * * (c) upon default in payment of any tax, assessment, charge or lien when the same shall be due, and continuing for 30 days after notice given by the Mortgagee to the Borrower, except that such default shall be cured if the Borrower shall duly, if and as prescribed by law, give or file a bond or undertaking to discharge the lien of any such tax, assessment or charge, or other lien, as provided in Section 2 of Article One hereof."
Where such instruments as a bond and mortgage are executed simultaneously and in respect to the same transaction, and they contain reciprocal references to each other, the terms of one are qualified by applicable provisions of the other. Security Trustand Safe Deposit Co. v. New Jersey Paper Board, c., Co.,57 N.J. Eq. 603; 42 Atl. Rep. 746; Burack v. Mayers, 121 N.J. Eq. 135; 187 Atl. Rep. 767; affirmed, 122 N.J. Eq. 5;191 Atl. Rep. 841.
It is acknowledged that the complainant did not communicate any notice to the mortgagor of the default in the payment of the taxes pursuant to terms of the clause in the mortgage, nor did he apprise the mortgagor of his intention to institute the present suit to foreclose the mortgage.
Ordinarily, a demand upon the mortgagor to perform the broken covenant or condition need not be made by the mortgagee before instituting suit to foreclose in reliance upon the right conferred by the condition. Brown v. Royal Battery Corp.,131 N.J. Eq. 345; 25 Atl. Rep. 2d 203; 41 C.J. 877 § 1085. *Page 591 
To determine whether the present complainant was obliged to give notice of the default and pursue the provisions of the clause in the mortgage manifestly requires a construction of the relative clauses and pertinent terms of the associated instruments. Such an undertaking seems unnecessary, for in the factual circumstances my decision of this case may well rest upon an equitable footing.
Stipulations commonly incorporated in bonds and mortgages which accord the mortgagee the option to accelerate the maturity of the debt in the event of a stated delinquency in the payment of interest or taxes, although occasionally spoken of as forfeiture clauses, have not been considered diabolic or iniquitous, nor have they been associated with that class of unseemly penalties and forfeitures which courts of equity decline to enforce. They have been regarded as legitimate contractual stipulations for a period of credit on condition, and they have been uniformly sustained in equity, unless the default to which they refer has been attributable to the conduct of the mortgagee. Baldwin v.Van Vorst, 10 N.J. Eq. 577; DeGroot v. McCotter, 19 N.J. Eq. 531; Spring v. Fisk, 21 N.J. Eq. 175; Ackens v. Winston,22 N.J. Eq. 444; Voorhis v. Murphy, 26 N.J. Eq. 434; IndustrialLand Development Co. v. Post, 55 N.J. Eq. 559;37 Atl. Rep. 892; Arkenburgh v. Lakeside Residence Association, 56 N.J. Eq. 102; 38 Atl. Rep. 297; Security Trust and Safe Deposit Co. v.New Jersey Paper Board, c., Co., supra; Bergman v. Fortescue,74 N.J. Eq. 266; 69 Atl. Rep. 474; Roche v. Hiss, 84 N.J. Eq. 242; 93 Atl. Rep. 804; Davis v. Salem County Mutual FireInsurance Co., 85 N.J. Eq. 324, 328; 96 Atl. Rep. 391; NewarkTrunk Co. v. Clark, 94 N.J. Eq. 79; 118 Atl. Rep. 263; Bodner
v. Rotman, 95 N.J. Eq. 510; 123 Atl. Rep. 529; Scharff v.Annattee Realty Co., 96 N.J. Eq. 225; 124 Atl. Rep. 702;Garfinkle v. Hickey, 96 N.J. Eq. 720; 126 Atl. Rep. 428;Weiner v. Cullens, 97 N.J. Eq. 523; 128 Atl. Rep. 176;Derechinsky v. Epstein, 98 N.J. Eq. 79; 130 Atl. Rep. 720;affirmed, 99 N.J. Eq. 447; 131 Atl. Rep. 922; K.S.S. Realty Co.,Inc., v. Ostroff, 100 N.J. Eq. 128; 135 Atl. Rep. 869;affirmed, 101 N.J. Eq. 771; 138 Atl. Rep. 921; *Page 592 Berla v. M. L. Holding Co., 105 N.J. Eq. 592;149 Atl. Rep. 64; affirmed, 107 N.J. Eq. 598; 154 Atl. Rep. 629; Marneil RealtyCorp. v. Twin Brook Realty Corp., 119 N.J. Eq. 205;181 Atl. Rep. 882; 1 Pom. Eq. Jur. (5th ed.) 216 § 439.
In confirming the legal vitality of such contractual agreements no line of distinction was formerly drawn between those relating to a default in the payment of interest and those pertaining to a dereliction in the discharge of tax assessments. Cf. Arkenburgh
v. Lakeside Residence Association, supra; Bergman v.Fortescue, supra; Weiner v. Cullens, supra; Derechinsky v.Epstein, supra; K.S.S. Realty Co. v. Ostroff, supra; MarneilRealty Corp. v. Twin Brook Realty Corp., supra.
Examined introspectively, the true purpose of each such clause becomes exposed. Their purpose is to place upon the debtor a coercive pressure to punctually perform the designated act, that is, the payment of the interest or the taxes, as the case may be. Manifestly the tax default clause appertains to the preservation of the mortgagee's security, and as between the contracting parties its sole purpose is to protect and maintain unimpaired the security held by the mortgagee for the payment of the debt and interest. Its natural function is to prevent the security from being reduced or diminished by the existence and accumulation of unpaid taxes presently to become superior liens upon the mortgaged premises.
"The life of the law," said Mr. Justice Holmes, "is not logic but experience." Cases arose in other jurisdictions in which it became evident in view of the basic purpose of the stipulation that to permit a mortgagee to accelerate the maturity of a mortgage debt by reason of some inconsequential omission of the mortgagor to pay the taxes, might in some circumstances operate to entail a result having the offensive characteristics of a penalty or forfeiture. For examples, Shaw v. Wellman,13 N.Y. Supp. 527; 59 Hun. 447; Ver Planck v. Godfrey,58 N.Y. Supp. 784; 42 App. Div. 161; Smalley v. Renken, 85 Iowa 612;52 N.W. Rep. 507; Eberich v. Solomon, 112 Conn. 498; 152 Atl. Rep. *Page 593 823; Fleming v. Franing, 22 Okla. 644; 98 Pac. Rep. 961; Swon
v. Stevens, 143 Mo. 384.
In the cases last cited it was held that where the delinquent taxes were paid before the "commencement of the action" or "before suit brought" or "before the suit has actually begun" or "before foreclosure is started," the cause of foreclosure is extinguished.
A case similar in factual respects eventually was presented to this court. In Haase v. Moser, 120 N.J. Eq. 437;184 Atl. Rep. 740; affirmed, 121 N.J. Eq. 344; 189 Atl. Rep. 638, it was resolved that where default is suffered to occur by the mortgagor in the payment of taxes, which dereliction would under the terms of the mortgage accelerate the payment of the principal, and the taxes so due have been paid before the bill is filed, such payment banishes the default which would entitle the mortgagee to foreclose and re-establishes the mortgage contract.
That decision is in accord with the prevailing weight of opinion and is assuredly consonant with natural equity. 1Wiltsie on Mortgages (4th ed.) 96; 2 Jones on Mortgages
(8th ed.) 1006; 2 Story Eq. (5th ed.), § 1314;31 A.L.R. 733; 41 A.L.R. 732.
Reverting to the relevant facts of the present cause, the evidence is persuasive and, indeed, uncontroverted that the defendant-mortgagor paid in full the tax arrearages on April 15th, 1944. The clerk's endorsement on the foreclosure bill signifies that it was filed on April 17th, 1944.
It is suggested that the testimony of Mr. Woolsey, who drew the check in payment of the taxes and delivered it personally to the tax collector, as well as the testimony of the tax collector, should be rejected as false in that the check may have been antedated and may have been received by the collector as late as April 18th, 1944, since it was not deposited by the collector in the bank until April 22d 1944. Uncontradicted proof, if credible, cannot be confuted and overthrown by the mere multiplication of suspicions and conjectures set afloat by an active imagination.
The real pressure of the argument on behalf of the complainant is applied to the contention that the determination *Page 594 
in Haase v. Moser, supra, is not adaptable to the circumstances of the instant case. It is proposed that the true rationale of the rule enunciated in that case is that the right of the mortgagee to foreclose is extinguished only where the delinquent mortgagor pays the taxes before the mortgagee mentally resolves to avail himself of the stipulation and executes some affirmative act to that end.
Mr. Samuel Koestler, whose veracity I do not impugn, has testified that the complainant consulted him on April 11th, 1944, and on that day instructed him to immediately institute proceedings to foreclose the mortgage. Aware of the inimical relations between his client and the mortgagor which had been otherwise occasioned, Mr. Koestler proceeded with expedition. He caused the prerequisite examination of the record title of the mortgaged premises to be made on April 12th, 1944. On the following day he prepared the foreclosure bill in part. On Friday, April 14th, 1944, he ascertained the specific amounts of taxes remaining unpaid for the respective years. He then completed the preparation of the bill of complaint, and at five P.M. on April 14th, 1944, he caused the bill, accompanied by a check for the filing fee (see Rule 178), to be mailed from his office at Elizabeth, New Jersey, to the clerk of this court in Trenton. There is no proof that the foreclosure bill arrived at the office of the clerk during office hours on Saturday, April 15th, on which date, as previously related, the mortgagor paid the taxes, nor do the proofs disclose the time at which such a letter so addressed would ordinarily reach its destination in the usual course of the mail. It is evident that the foreclosure bill was not in reality filed until Monday, April 17th, 1944.
I am not unaware that it was once the practice of the clerk to mark the filing date of bills as of the date they were placed in the mail or as of the day before they were actually received by the clerk by mail. Chancellor Walker disapproved this practice.Schenck v. Yard, 86 Atl. Rep. 81. It was characterized as "improper and illegal" by the late Vice-Chancellor Buchanan inMetropolitan Life Insurance Co. v. Lodzinski, 121 N.J. Eq. 183; 188 Atl. Rep. 681, and *Page 595 
on appeal Mr. Justice Bodine, delivering the opinion, remarked: "Process cannot issue until the bill is filed. However, in the determination of this case, it is not necessary to regard the bill as filed before the stamped date. Besides, there is no proof of an actual earlier filing." 122 N.J. Eq. 404, 407;194 Atl. Rep. 79. If it had been the intention of the appellate court to re-establish the former practice, I am confident that such a purpose would have been definitely declared.
I have not ignored the circumstance that the solicitor of the complainant prepared, signed, and forwarded the writ of subpoena in this cause to the sheriff of Mercer County on Saturday, April 15th, 1944. I observe, however, that the time of issuance of the writ was postdated by him to April 17th, 1944. It is true that in the parlance of our profession the expression "filing of the bill" is commonly used to denote the commencement of a suit in Chancery, but the filing of a bill is not strictly the "beginning" or "the commencement" of a suit in this court. Where, as here, the suit is in rem, it is regarded as begun upon the filing of the bill plus at least the effective issuance of subpoena. Bittles v. West Ridgelawn Cemetery, 111 N.J. Eq. 416; 162 Atl. Rep. 393; Grobholz v. Merdel Mortgage InvestmentCo., 115 N.J. Eq. 411, 424; 170 Atl. Rep. 815. Obviously it was the intent of the solicitor that the writ should not inherit effectiveness until the date of the teste.
Inducements of fairness and justice have generated the conviction that courts of equity should no longer be constrained to sustain, in the absence of waiver or estoppel, the contractual option of a mortgagee to foreclose for a default in the punctual payment of taxes, however unconscionable may be the result. Vice-Chancellor Backes once had occasion to comment: "The complainants were `sharp on the trigger' in calling their mortgage but were within their rights. The court has no discretion to deny them relief." Berla v. M. L. Holding Co.,supra. The right to foreclose was deemed to be immutably vested upon the occurrence of the stipulated default. It is, of course, desirable that contracts should generally, and in the absence of some extraordinary *Page 596 
circumstances, be enforced in accordance with the intention of the parties as exhibited by the contract, and it is not ordinarily unconscionable for a party to so insist, but history reminds us that the very organization of equity jurisprudence has proceeded upon the insistence that no person shall be permitted to avail himself of a legal right for the purposes of fraud, injustice, oppression and vindictive injury.
Equity jurisprudence in reality is a philosophy which can never be obliterated or abolished in any land or country where good faith, honest and fair dealing constitute a desirable standard of human conduct. The principles of equity are and should be sufficiently flexible to enable courts to determine from all the circumstances of each particular case whether or not the advantage sought by the litigant is unconscionable. In searching for the needle, one must not ignore the haystack in which it is imbedded.
In exposition of principle and policy, the decision in Haase
v. Moser, supra, leads the way to a just determination of the present cause, unless, as here advocated, the ability of this court to do equity must in the present case depend upon the "photo finish" in the race between the complainant and the mortgagor, the one to the office of the clerk and the other to the collector of taxes.
Equity must envisage the interests of both parties. The mortgage is an elaborate document of twenty typewritten pages. It was prepared by the attorney of the complainant. The implantation in it of a tax default clause dissimilar to that in the bond is significant for present consideration in that it at least reveals that the propriety of giving notice by the mortgagee to the mortgagor in the event of such default, to be followed by a period of grace, had in fact engaged the minds of the parties at the time the mortgage was composed or executed, and from it springs the inference that the complainant did not then consider that such a course of procedure would be especially prejudicial and harmful to him. Moreover, it reveals that the mortgagee was not concerned about the non-payment of taxes provided the mortgagor supplied him with a bond conditioned for their eventual payment. Manifestly, the complainant desired only the *Page 597 
preservation of his security. The payment of the taxes on April 15th, 1944, fully restored the security intended to be protected by that clause of the mortgage. The complainant had watched with complacency the unpaid taxes accumulate until the mortgagor instituted an action at law to recover damages from a company in which the complainant is said to be financially interested.
Incidentally, it is noticed that the company in which the complainant is said to have a substantial interest is a tenant of the mortgaged premises, and it has not been made a party defendant in the present suit. However, the complainant's motive in instituting this suit is immaterial. Weiner v. Cullens,supra.
Significance is ascribed to the fact that the principal debt secured by the mortgage had been materially reduced, and that the mortgagor was not delinquent in the payment of interest or installments of principal. Assuredly the complainant will suffer no recognizable loss or injury by a re-establishment and continuance of the mortgage contract, except his outlay and expense incurred in the institution of this suit, which may well be a matter of consideration in the settlement of the decree.
An observation of the situation of the mortgagor discloses that to aid the complainant in the foreclosure of the mortgage will deprive the mortgagor of a right of credit originally intended to extend over a future period of years. The consequences involving a replacement of the loan would undoubtedly be oppressive.
In the circumstances of the present case, I shall, motivated by considerations of equity, mitigate the consequence of the default and advise a decree which, upon the reimbursement of the complainant for his costs and expenses incurred in the prosecution of this suit, will direct a dismissal of the bill. *Page 598