Complainant, Benjamin Eisenberg, on February 28th, 1945, purchased from Sharon Gardens, Inc., a corporation, the premises described in the bill of complaint and known as 249-253 Orange Place, Plainfield, subject to a purchase-money mortgage held by the defendant, Plainfield Savings Bank, in the sum of $45,500, upon which mortgage there was then due for principal $44,250.
In negotiating for the purchase of the premises the complainant inquired of Mr. Hutchinson, an officer of the defendant bank, concerning the terms of the mortgage, and was advised that the mortgage was payable in ten years from its date (May 13th, 1942), bore interest at the rate of 1% for the first year, 2% for the next four years and 3% for the last five years, payable quarterly; that it provided for quarterly amortization of principal at the rate of $125 from March 1st, 1943, and thereafter $187.50 for the years 1944, 1945 and 1946; $237.50 for the year 1947; $275 for the year 1948; $300 for the year 1949 and $375 for the years 1950 and 1951, such payments to be made on the quarterly interest periods, and that the mortgage contained the usual thirty day default clause with respect to the payment of interest, installment payments and taxes.
The taxes for the first quarter of the year 1945 at the closing of title, and also interest and installment payments due on that date were paid to the defendant bank. Complainant relying upon the attorney who represented him at the closing that the collector of taxes would send him a bill for the taxes for the second quarter and failing to receive the bill had not paid the quarterly tax installment on the 1st of May, whereupon the defendant bank notified complainant by letter that the mortgage was in default and demanded payment of the principal. Immediately upon receipt of the letter on June 9th, complainant paid the taxes and exhibited the receipted tax bill to Mr. Hutchinson, notwithstanding which, the defendant refused to relent and insisted upon foreclosure unless complainant agreed to pay $15,000 on account of principal, in which event the bank would accept a new mortgage *Page 118 
for the difference bearing interest at the rate of 4 1/2% and for a shorter term.
Letters and conferences followed, and on July 17th complainant received the following letter from Mr. Hutchinson:
"Suggesting to you that we would be willing to compromise providing the mortgage was put on different terms, we now wish to point out to you, so that the record may be clear, that this opportunity is open to you for settlement of the mortgage on a basis which would make the mortgage a fit one for the bank's portfolio.
"You may at any time prior to July 21st, call at this office for the purpose of making such adjustment of the mortgage. If we have not heard from you by that time, we shall be obliged to proceed with the foreclosure."
This was followed by a letter from counsel in which he said:
"I plan on filing my bill in the above matter. I would appreciate it if you would have your client give me a statement of the tenancies, whether month to month or lease, that there are no persons in possession who have any contracts for purchasing the same."
"I might point out that I do not desire at this time to disturb the tenants by way of notice to them, and if the information indicates that there are no long term leases or contracts for sale, I shall not then make those tenants or other persons parties."
Thereupon complainant filed this bill praying that the defendant bank be enjoined from foreclosing its mortgage. The defendant counter-claims, alleging that on May 1st, 1945, the taxes assessed against the premises for the second quarter of the year 1945 became due and payable and remained in arrears for thirty days; that it notified complainant of its election to foreclose, and prays decree for the sale of the mortgaged premises.
I am led to the conclusion by the uncontroverted facts that the defendant bank perceived an opportunity to wrest from the complainant a more favorable mortgage when it appeared that the complainant had not paid the quarter-annual tax promptly.
It is the settled law of this state however, that where a default in the payment of taxes occurs, which under the terms of the mortgage would accelerate the payment of the principal, such default becomes neutralized if the taxes are paid before *Page 119 
the bill for the foreclosure of the mortgage is filed. Haase v.Moser, 120 N.J. Eq. 437; 184 Atl. Rep. 740; affirmed, 121 N.J. Eq. 344; 189 Atl. Rep. 638; Gilbert v. Pennington Trap RockCo., 135 N.J. Eq. 587; 39 Atl. Rep. 2d 647.
The counter-claim will be dismissed, and injunction awarded complainant.